## A05A1146. ROBY v. THE STATE.
(614 SE2d 916)

ELLINGTON, Judge.

A Gwinnett County jury found Lethea Quiana Roby guilty of obstruction of a law enforcement officer, OCGA § 16-10-24. She appeals from the denial of her motion for new trial, contending the trial judge erred in admitting hearsay testimony. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following evidence. In December 2003, two police officers went to the apartment of Jonathan Sibert to serve an arrest warrant. The officers believed Sibert was in the apartment because earlier that day they had responded to a theft-of-services complaint made by a cab driver. The cab driver, who kept Sibert's driver's license, watched Sibert go into the apartment to get money to pay him, but Sibert never came out. The officers knocked on the door and announced "Duluth Police." When no one responded, one officer pressed his ear to the door and listened. No sound came from inside the apartment. After about ten minutes of trying to get someone to answer their knocks, the officers told the apartment manager to unlock the door and admit them. When the officers stepped inside, they saw Roby standing "directly behind the door."

The officers testified that Roby did not appear startled or surprised or groggy, as if she had been sleeping. The officers informed Roby that they had a warrant for Sibert's arrest and asked if he was in the apartment. Roby did not answer immediately, saying instead: "Well, I don't know what this is all about." The officer explained the warrant process again. Roby, who appeared nervous, glanced over her shoulder a few times. One officer got the impression that Roby was "stalling." The officers explained their purpose again and told Roby that if she was lying to them about Sibert's presence or concealing him, she could be charged with obstruction. Roby told the officers Sibert was not in the apartment. When the officers searched the apartment, they found Sibert hiding in a towel closet near the bathroom. Roby did not seem at all surprised that Sibert was there.

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

The officers asked Roby why she had told them Sibert was not there. She said, "I didn't know. I mean, he didn't tell me what this was about."

The officers told Roby she was under arrest and attempted to handcuff her. Roby resisted, kicking and struggling. Roby admitted at trial that she refused to comply with the officers' orders. Sibert asked the officers why they were arresting Roby; the officers told him that Roby had obstructed his arrest. The officer then testified, over objection, that Sibert said "he wasn't sure why [the officers] weren't allowed to come in and why [Roby] would say that he wasn't there because she was aware of the fact of his presence in the apartment." Roby testified at trial and contended she did not hear the police knocking, that a television was on, and that she had been in the bathroom shortly before they entered the apartment.

1. Roby contends the trial court committed reversible error for allowing into evidence the officer's testimony that Sibert said that Roby knew he was in the apartment. Roby argues that the hearsay testimony was not admissible as res gestae and violated her right to confront witnesses against her.

(a) OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." Whether a declaration is admissible as part of the res gestae "is left to the sound discretion of the trial court, considering the time, circumstances, and statements in question." (Punctuation and footnote omitted.) *Espy v. State*, 246 Ga. App. 1, 2 (2) (539 SE2d 513) (2000). "So long as the statement is relevant and made without premeditation, the trial court may admit the evidence." (Footnote omitted.) Id. The evidence supports the trial court's conclusion that Sibert's statement was made contemporaneously with his and Roby's arrests, both of which occurred immediately after Roby obstructed the officers' efforts to execute Sibert's arrest warrant. The statement was a spontaneous utterance made in reaction to the circumstances, not to police questioning. And finally, whether Roby was aware of Sibert's presence was relevant to whether her conduct was intended to obstruct the officers in the lawful exercise of their duty. Given this evidence, we cannot say the trial court abused its discretion in admitting Sibert's declaration as part of the res gestae. Id.

(b) Roby also contends the statement should have been excluded because she could not confront Sibert and subject his statements to cross-examination as is her right under the Sixth Amendment to the United States Constitution. See *Crawford v. Washington*, 541 U. S.

36, 68 (V) (C) (124 SC 1354, 158 LE2d 177) (2004).[2] This argument fails because Sibert's statement was not "testimonial." That is, the statement, when made, was not offered for the purpose of establishing a fact in a police investigation. See *Pitts v. State*, 272 Ga. App. 182 (612 SE2d 1) (2005). Sibert made his spontaneous statement almost immediately after Roby's obstructing conduct, during Roby's arrest, and without any questioning, prompting, or investigating by the police. In fact, no "investigation" was conducted; Roby's arrest was made based upon conduct the police themselves witnessed.

However, even if this statement could be considered testimonial in nature, its admission was harmless because it was cumulative of other evidence of Roby's knowledge that Sibert was in the apartment. See *Moody v. State*, 277 Ga. 676, 679-680 (4) (594 SE2d 350) (2004). The jury could infer Roby knew Sibert was in the apartment given this evidence: (1) Roby and Sibert were in the apartment together for some time; (2) Roby's demeanor and behavior were indicative of guilty knowledge; (3) Roby made an implicitly inculpatory statement ("[H]e didn't tell me what this was about."); (4) She failed to respond to prolonged, loud knocking; and (5) Sibert was found hiding in the towel closet near the bathroom Roby claimed to be in shortly before the police entered the apartment. We find no reversible error. See id.

2. The State's motion to dismiss Roby's appeal for failure to timely file a brief is dismissed at moot.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 18, 2005.

*Julian L. Sanders*, for appellant.
*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Assistant Solicitor-General*, for appellee.

---

[2] The United States Supreme Court explained:
Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [*Ohio v. Roberts*, 448 U. S. 56 (100 SC 2531, 65 LE2d 597) (1980)], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
(Footnote omitted.) *Crawford v. Washington*, 541 U. S. at 68 (V) (C).