## S06A2049. HUMPHREY v. THE STATE.
(642 SE2d 23)

HINES, Justice.

Cody Lee Humphrey appeals his conviction for malice murder in connection with the fatal stabbing of 11-year-old Precious Hostick. He challenges an in-court identification; the introduction of similar transactions; the admission into evidence of a witness's recorded statement; the trial court's instruction regarding such statement; the admission of certain hearsay testimony; and the denials of his motions for directed verdicts of acquittal. Finding the challenges to be without merit, we affirm.[1]

The evidence viewed in favor of the verdicts showed that on August 17, 1993, 11-year-old Precious Hostick was stabbed repeatedly while in her apartment and she bled to death; she sustained 42 wounds. She was found with her nightgown pulled up, and the lower part of her body nude. The nightgown was folded in the middle as though it had been grasped and a button was pulled loose, indicating a struggle. The child's panties were found in her bedroom at the foot of the bed.

Humphrey lived with his girlfriend in the apartment directly above the one where the victim lived. The victim's mother frequently allowed Humphrey's girlfriend to use the telephone in her apartment, and the day before the murder, loaned her the apartment key for that purpose. The girlfriend told Humphrey she had the Hostick key, which she placed on a bar in their apartment. Humphrey's fingerprint was found on a telephone in the victim's apartment. There was no evidence of forced entry into the home.

Prior to the murder, Humphrey told a cell mate, Johnson, that he was angry at the people that lived below him because they kept calling the police on him, and that he was "going to get even one way or another." He was in possession of a butcher's knife the night before the murder. Humphrey was seen running away from the murder scene on the day of the murder by a neighbor, Patterson. Humphrey's sister also saw him that day and he had what appeared to be "red paint" on his jeans. Humphrey looked like "something was wrong,"

---

[1] The murder of the child occurred on August 17, 1993. On August 30, 2000, a Dougherty County grand jury indicted Humphrey for malice murder and felony murder while in the commission of aggravated assault with intent to rape and/or while in the commission of burglary. Humphrey was tried before a jury March 26-30, 2001, and found guilty of both malice murder and felony murder. On March 30, 2001, he was sentenced to imprisonment for life without parole for the malice murder; the felony murder stood vacated by operation of law. Trial counsel filed a motion for new trial on Humphrey's behalf on April 13, 2001; Humphrey filed pro se motions for new trial on May 24, 2002, and July 13, 2005. Humphrey was denied a new trial on June 14, 2006. A notice of appeal was filed on July 12, 2006, and the case was docketed in this Court on August 9, 2006. The appeal was submitted for decision on October 2, 2006.

and "he was about high or something." She observed that Humphrey changed clothes before being picked up by the police for an interview regarding the murder.

Humphrey told his brother that a little girl had been killed at his apartment complex prior to the time that the child's body was found.

While incarcerated following the murder, Humphrey discussed details of the crime with fellow inmates, including that there was another girl, about five years old, present at the Hostick apartment at the time of the killing, and that the little girl hid under her covers and tried to pretend that she was asleep during the attack on her sister.

The victim's sister was indeed in the apartment at the time of the brutal attack. She heard noises coming from the living room; she heard the table fall over, a man say "lay down on the floor," and her older sister saying "help, mama, help." The little girl told her social services case manager, Murray, that her sister's killer was "the black man that lived upstairs above her."

1. Citing *Neil v. Biggers*, 409 U. S. 188, 196-197 (93 SC 375, 34 LE2d 401) (1972), Humphrey contends that the trial court erred in permitting Patterson to identify him in court because the identification was tainted by unduly suggestive pretrial identification procedures. He complains that the initial pretrial photographic array, which occurred long after the murder, contained several photographs which did not resemble him, and that in a second photographic lineup, two of the six males were white, two of the pictures were of the same person, and his photograph, unlike those of the other men, was in profile. But the complaints are unavailing.

An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, " 'This is our suspect.' " *Padilla v. State*, 273 Ga. 553, 554 (1) (544 SE2d 147) (2001). The fact that the accused may be of a different race or ethnicity does not in and of itself make the identification procedure impermissibly suggestive, especially when there are other individuals in the line-up having roughly the same characteristics and features as the accused. Id. While some of the photographs contained in the record are of individuals different in appearance, by virtue of race and otherwise, from Humphrey, there are others of men clearly resembling him. As far as the time gap of several years between the murder and the initial identification by Patterson, it goes to the question of reliability. See *Bonner v. State*, 278 Ga. App. 855, 856 (2) (630 SE2d 127) (2006). But, even assuming arguendo that the pretrial identifications were tainted for whatever reason, Patterson's in-court identification of Humphrey was admissible because it did not depend upon the prior identifications but had an independent origin. *Wilson*

*v. State*, 275 Ga. 53, 59 (3) (562 SE2d 164) (2002). Patterson knew Humphrey by sight from living in the same apartment complex, and, from an adjacent apartment, clearly viewed Humphrey fleeing the crime scene. Patterson testified that he had "known all along" who it was that came out of the victim's apartment the morning of the murder. Id.

2. The State was permitted to introduce testimony from two of Humphrey's nieces and another young woman about Humphrey's sexual assaults upon them. Humphrey contends that the trial court erred in admitting such testimony as similar transaction evidence because the incidents were not relevant to the instant case, and constituted improper character evidence that resulted in his being irreparably prejudiced.

Certainly, a similar transaction is properly admitted if there is sufficient evidence that the accused committed the offense or act and there is a sufficient connection or similarity between the offense and the crime charged, so that proof of the former will tend to prove the latter; however, the evidence is not to be admitted if it is done so merely to raise an improper inference about the character of the accused. *Greene v. State*, 274 Ga. 220 (2) (552 SE2d 834) (2001). But, that is not the case here. Humphrey incorrectly focuses on the differences between the prior assaults and the instant crime rather than correctly focusing on their similarities. Id. at 221 (2). The victims unequivocally identified Humphrey as the perpetrator. Moreover, these other incidents, while not resulting in the death of the victims as in the instant case, plainly show Humphrey's bent of mind, pattern, or course of conduct to sexually assault, with threat of harm or actual violence, girls and young women with whom he was familiar.[2]

In any event, even if such evidence was inadmissible as similar transactions, any error would have to be deemed harmless because the other evidence supporting Humphrey's conviction was overwhelming, and it is highly probable that admission of the evidence of prior

---

[2] Humphrey's niece, J. H., who was 21 at the time of trial, testified that when she was a child Humphrey engaged in sexual contact with her; he would "mess" with her and put his hands on her sex organs; he would "put his hand around [her] neck and tell [her] [she] had better not tell nobody"; he would choke her; during one incident, Humphrey placed a knife to her neck and threatened to hurt her if she revealed the sexual abuse.

Another niece, E. H., testified that when she was a young girl, Humphrey put his hand on her thigh, and told her that she "would get anything [she] want[ed] from him, but don't tell nobody."

A. D., whose family knew Humphrey, testified that Humphrey beat her because she would not have sex with him and his brother. The police and paramedics were summoned because of this incident.

incidents did not contribute to the judgment. *Clark v. State*, 280 Ga. 899, 900 (2) (635 SE2d 116) (2006).

3. The trial court allowed the State to introduce into evidence, under the necessity exception to hearsay,[3] a recorded police interview of Johnson, in which Johnson related that while incarcerated with Humphrey shortly before the murder, Humphrey told him about wanting to get even with his neighbor on the floor below. Citing *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), Humphrey contends that the admission of this evidence violates the Confrontation Clause as well as constituting inadmissible hearsay. But, Humphrey's objection, which was made during a pre-trial hearing on motions by the State, was based upon the alleged violation of his right of confrontation; he did not pursue an objection to admission of the evidence as an improper exception to hearsay.[4] There is a definite distinction between a challenge to the admission of evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule. *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004); *Yancey v. State*, 275 Ga. 550, 551-557 (2) (570 SE2d 269) (2002). Even so, under either scenario, Humphrey does not prevail.

Accepting that admitting the recorded evidence of the police interview with Johnson was violative of *Crawford*,[5] the inquiry does not end there because even an error of constitutional magnitude such as a violation of the right of confrontation can be deemed harmless if it can be shown that there is not a reasonable probability that it contributed to the verdict; indeed, this Court has determined that a *Crawford* violation is harmless if the hearsay was cumulative of other evidence or if the evidence against the defendant was overwhelming. *Daniels v. State*, 280 Ga. 349, 351 (2) (628 SE2d 110) (2006); *Willingham v. State*, 279 Ga. 886, 887 (1) (622 SE2d 343) (2005).

As Humphrey concedes, Johnson's statement may have raised one possible motive for killing the victim, but it was not necessary to prove a motive to establish either malice murder or felony murder, for which he was on trial. And the evidence of Humphrey's guilt of the murder of the victim was overwhelming; therefore, any violation of *Crawford* does not warrant a new trial. *Daniels v. State*, supra at 351

---

[3] OCGA § 24-3-1 (b) provides:

Hearsay evidence is admitted only in specified cases from necessity.

[4] In his argument, Humphrey questioned the State's diligence in attempting to find Johnson, and stated that the mere fact that the statement was made at the police department did not make it reliable; however, he continued to object solely on the basis of lack of confrontation. His attorney stated that the statement should not be "acceptable under the evidence-exception to hearsay based upon the defendant's constitutional right in this case to cross-examination."

[5] See *Davis v. Washington*, ___ U. S. ___ (126 SC 2266, 165 LE2d 224) (2006).

(2); *Willingham v. State*, supra at 887 (1). Moreover, because of the overwhelming evidence against Humphrey, any error in permitting Johnson's statement as admissible under the necessity exception would be harmless as well. *Williams v. State*, 277 Ga. 853, 855 (1) (596 SE2d 597) (2004).

4. Humphrey also complains that the trial court's instruction to the jury regarding Johnson's absence constituted an improper comment on Johnson's credibility. However, the complaint is unavailing. Humphrey requested that the trial court "instruct the jury on the witness's unavailability for whatever reason the judge thinks is appropriate to tell them." And Humphrey clearly acquiesced in the instruction given;[6] therefore, he cannot now be heard to complain about it. *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188) (1992).

5. Humphrey next contends that Murray's testimony about statements made to her by the victim's sister identifying Humphrey as the killer was inadmissible hearsay because the prosecution failed, under *Duckworth v. State*, 268 Ga. 566, 567 (492 SE2d 201) (1997), to lay the proper foundation for such statements as they had been reduced to writing in Murray's field notes. But, Humphrey failed to make any such objection when the testimony was given.[7] Thus, this issue was not preserved for appeal. *Quintanilla v. State*, 273 Ga. 20, 21 (2) (537 SE2d 352) (2000).

6. Finally, Humphrey contends that the evidence was insufficient to support a finding of his guilt for malice murder or felony murder because the evidence was largely circumstantial and did not exclude every other reasonable hypothesis save that of his guilt. But, that is plainly not the case. The evidence of record was sufficient for a rational trier of fact to find Humphrey guilty beyond a reasonable doubt of the murder of the young victim. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 5, 2007.

*Agis R. Bray III*, for appellant.

---

[6] At the conclusion of the trial court's instruction, Humphrey's trial counsel voiced no objection whatsoever, and merely said "Thank you, your Honor."

[7] Humphrey's only objection, which was on redirect, was to the State's question of whether the victim's sister seemed to have any doubt about the information she shared with Murray, and was on the ground that the question called for speculation.

*Kenneth B. Hodges III, District Attorney, Gregory W. Edwards, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General,* for appellee.