## A08A1092. SEGEL v. THE STATE.
### (667 SE2d 670)

PHIPPS, Judge.

After a jury trial, Alan Segel was convicted in the Dawson County Superior Court of speeding and of fleeing and attempting to elude. He contests the sufficiency of the evidence to support his conviction for fleeing and attempting to elude, and he challenges the admissibility of certain evidence. We affirm.

1. OCGA § 40-6-395 makes it "unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop."

> The standard of review for sufficiency of the evidence is set out in *Jackson v. Virginia*.[1] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[2]

The traffic patrol officer with the Dawson County Sheriff's Department who arrested Segel for the crimes underlying this case testified to the following. At about 4:40 p.m. on May 29, 2006, the officer was dressed in uniform and driving a marked patrol car along a highway in Dawson County. He observed a blue Corvette traveling in the opposite direction at what he estimated to be in excess of the posted speed limit of 65 miles per hour. The officer used his radar unit, which showed that the Corvette was traveling at a rate of 87 miles per hour. The officer activated the patrol car's siren and blue lights, turned across the median, and pursued the Corvette. While

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] *Davis v. State*, 270 Ga. App. 777 (1) (607 SE2d 924) (2004).

other vehicles traveling in that direction began to slow down, merge into the right lane, or otherwise pull off the road altogether, the Corvette appeared to the officer to accelerate. Thus, the officer accelerated, maintaining visual contact with the Corvette. About a quarter of a mile later, at an intersection just across the Dawson/Forsyth county line, the officer lost sight of the Corvette. But motorists in the vicinity pointed the officer in the direction in which the Corvette had turned. After turning in that direction, the officer spotted the Corvette and continued his pursuit until he lost sight of the Corvette "in a curve." Determining that it was likely that the Corvette had "turned off somewhere," the officer turned into the only residential subdivision nearby. There, a bystander asked the officer whether he was searching for a blue Corvette and then pointed the officer to the rear of the subdivision. The officer traveled in that direction to the street's dead end, where he found the Corvette with its engine idling. Segel, who was in the driver's seat, was given traffic citations and arrested. The officer testified, "[Segel] said something along the lines of I had a 50 percent chance that you weren't coming after me."

(a) Segel points to his testimony that he did not see the blue lights until the patrol car approached him at the dead end of the subdivision. In addition, he points out that the state's case lacked a video recording of the incident. But any evidentiary weaknesses, conflicts, or inconsistencies are for the jury to resolve.[3] "[W]e do not speculate which evidence the jury chose to believe or disbelieve."[4] Where as here, there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[5]

(b) Pointing to evidence that he traveled into and was arrested in Forsyth County, Segel argues that the state failed to prove venue. Venue must be laid in the county in which the crime was committed and must be proved by the prosecution beyond a reasonable doubt.[6] Notwithstanding the evidence cited by Segel, the state adduced evidence that Segel committed the crimes of speeding and of fleeing and attempting to elude in Dawson County. Thus, venue as to each of the charged offenses was properly laid in Dawson County, where the case was tried.

2. Segel contends that the trial court erred by allowing the state to introduce radar speed detection evidence, complaining that the

---

[3] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).
[4] *Watson v. State*, 235 Ga. App. 381, 384 (1) (509 SE2d 87) (1998).
[5] *Rankin*, supra.
[6] See *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).

officer did not inform him that he had a right to ask the officer to check the accuracy of the speed detection device. Pursuant to OCGA § 40-14-5 (b), each county law enforcement officer using a radar device

> shall notify each person against whom the officer intends to make a case based on the use of the radar device that the person has a right to request the officer to test the radar device for accuracy. The notice shall be given prior to the time a citation and complaint or ticket is issued against the person and, if requested to make a test, the officer shall test the radar device for accuracy.

The officer could not recall at trial whether he had complied with this Code provision. Nevertheless, in view of other evidence that Segel was speeding, any error the trial court may have committed in allowing evidence of the radar results must be considered harmless.[7] Segel's attorney asked him at trial how fast he was traveling that day. He answered, "I would say I was speeding. I would probably estimate I was probably close to 80." In addition, Segel's wife was called in Segel's defense. She was a passenger in the Corvette that day. When asked about their rate of speed, she testified, "[W]e were speeding," estimating their rate at "about 75 to 80" miles per hour.

3. Citing *Crawford v. Washington*,[8] Segel contends that the trial court erred by allowing the officer to testify that a bystander had asked him whether he was searching for a blue Corvette and then pointed toward a direction. Segel complains that he could not cross-examine the unidentified person, who was not called at trial. Segel's reliance upon *Crawford*, however, is misplaced because the cited exchange contained no testimonial statement.[9] The underlying circumstances showed that the primary purpose of the exchange between the officer and the bystander was to enable the officer to address an ongoing emergency.[10] Therefore, the trial court did not

---

[7] *Carver v. State*, 198 Ga. App. 254, 255 (401 SE2d 300) (1990).

[8] 541 U. S. 36, 68 (124 SC 1354, 158 LE2d 177) (2004) (the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination).

[9] See generally *Davis v. Washington*, 547 U. S. 813, 822 (II) (126 SC 2266, 165 LE2d 224) (2006) (statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency).

[10] See *Hester v. State*, 283 Ga. 367, 370-371 (4) (659 SE2d 600) (2008) (where the hearsay statement that the police officer elicited from the declarant was necessary to be able to resolve a present emergency, rather than simply to learn what had happened in the past and the interrogation was strikingly informal and brief and in an environment that was neither tranquil nor clearly safe, the hearsay statement was nontestimonial).

abuse its discretion in allowing the testimony under the res gestae exception to hearsay.[11]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 9, 2008.

*Michael T. Saul*, for appellant.

*Lee Darragh, District Attorney, Jennifer D. Hart, Assistant District Attorney*, for appellee.

---

[11] See *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006) (when the statement at issue is nontestimonial in nature, the state's normal rules regarding the admission of hearsay apply); *Demons v. State*, 277 Ga. 724, 728 (5) (595 SE2d 76) (2004) (hearsay statements were determined to be nontestimonial and thus not precluded by *Crawford*, but admissible under Georgia's res gestae exception to the hearsay rule); OCGA § 24-3-3 (declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae); see also *Roby v. State*, 273 Ga. App. 308, 309 (1) (614 SE2d 916) (2005) (whether a statement is admitted as part of res gestae is within the sound discretion of the trial court).