A09A0543. FREEMAN v. THE STATE.
(678 SE2d 97)

PHIPPS, Judge.

A jury found Anica Freeman guilty of aggravated assault upon a charge that she had assaulted Frances Johnson by cutting her arm "with a blade, an object which, when used offensively against a person, is likely to result in serious bodily injury." Appealing her conviction therefor, Freeman contends that the evidence was insufficient. Because the record shows otherwise, we affirm.

When an appellant challenges the sufficiency of the evidence to support her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] The appellant no longer

---

[1] *Selfe v. State*, 290 Ga. App. 857, 858 (1) (660 SE2d 727) (2008) (punctuation and emphasis omitted), quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.[2]

Johnson testified that Freeman inflicted a wound upon her arm the night of February 27, 2006, when the two were at a social gathering of at least 50 people. Johnson recalled that Freeman had warned her earlier that evening that she had something for her. When Freeman later reminded her that she had something for her, Johnson retorted that Freeman had nothing for her. Johnson recalled that Freeman then raised her hand in the air, brought it down, and repeatedly swung at her. Johnson described realizing that she was being repeatedly cut, although she was unable to see what type of instrument was cutting her. Johnson testified that she had done nothing to harm Freeman on that evening and recalled only one previous encounter with Freeman. About one to three weeks before that evening, at the same social gathering location, Johnson had rebuffed Freeman's advances, and the episode had escalated into an argument between them.

Johnson's friend, who was with Johnson the night she was cut, identified Freeman at trial as the person who had inflicted Johnson's wound. According to the friend, there were about 20 people inside the location. She summarized the altercation: "[Freeman] said something but I don't recall what was said. [Johnson] said something back, both swung. The next thing you know, [Johnson] was cut." According to Johnson's friend, Freeman had initiated the attack, and Johnson had not had a weapon and had not hurt Freeman. Johnson's friend further testified that she had not seen anything in Freeman's hand, nor had she seen a knife or any weapon being swung around. She described that, after Johnson's arm was cut, "everything was hanging out" of it. Pictures of Johnson's wounded arm were shown to the jury.

Given the extent of her arm injury, Johnson was rushed to a hospital. The attendant emergency room nurse testified that Johnson's arm wound was five to six inches in length. When asked how, based on her years of experience, the wound had been caused, the nurse responded, "This was a smooth wound. It was a clean cut. It was a sharp instrument be it a blade, box cutter. It could be anything metal like that, that was real sharp that would make that kind of a wound." The nurse further recounted, "There was some partial tendons showing so it went through the muscle and we sewed up the inside with sutures and then stapled the outside."

About a week after the incident, Johnson identified Freeman as

---

[2] *Segel v. State*, 293 Ga. App. 506, 507 (1) (a) (667 SE2d 670) (2008).

her assailant from a photographic lineup. Freeman was arrested for aggravated assault and gave a police statement regarding the incident in question. Freeman said that she had observed Johnson pick up a bottle and approach her; that Johnson had then challenged her to "knuckle up"; and that her own hands had been empty and she had merely stared at Johnson, who next exclaimed that she had been cut. Freeman denied in her police statement that she had cut Johnson. At trial, Freeman neither testified nor called any witnesses.

On appeal, Freeman argues that there were evidentiary weaknesses and inconsistencies such that the state failed to prove that she was the person who inflicted Johnson's wound, that she had the intent to do so, and that the object that caused Johnson's wound was a blade. She claims that Johnson's identification of her as the assailant was not credible, accusing Johnson of being biased against her based upon their initial encounter. Freeman cites evidence that there were approximately 20 to 50 people at the social gathering; that she and Johnson were both swinging when Johnson was cut; and that Johnson had been holding a bottle at the time. In addition, Freeman points out that the state presented no witness who had seen a blade or any weapon in her hand.

Freeman's contention, however, is unavailing. The issues she raises of

> evidentiary weaknesses, conflicts, or inconsistencies are for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[3]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED APRIL 14, 2009.

*Jennifer F. Arndt*, for appellant.

---

[3] Id. (punctuation and footnotes omitted); see OCGA § 16-5-21 (a) (2) (defining aggravated assault); *Lattimer v. State*, 231 Ga. App. 594, 595 (499 SE2d 671) (1998) (presence of a weapon may be established by circumstantial evidence, and a conviction for aggravated assault may be sustained even though the weapon was neither seen nor accurately described by the victim; some physical manifestation is required or some evidence from which the presence of a weapon may be inferred).

*W. Kendall Wynne, Jr., District Attorney, Clint C. Malcolm, Assistant District Attorney*, for appellee.