## A09A0357. SANDERS v. THE STATE.

(678 SE2d 579)

PHIPPS, Judge.

A jury found Samuel Sanders guilty of committing upon L. V. the crimes of kidnapping with bodily injury, aggravated sodomy, rape, and robbery (of money) by intimidation. On appeal, Sanders contends that the evidence was insufficient and that the trial court erred by admitting evidence of DNA test results and similar transactions. Because he has shown no merit in these contentions, we affirm.

1. When an appellant challenges the sufficiency of the evidence to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] The appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.[2]

The state presented the testimony of L. V. At about 5:00 p.m. on February 17, 2007, a man approached then 28-year-old L. V., who was moving out of her residential unit at Kingston Gardens Apartments in Macon. The man offered his help for $20. She did not know the man, but had noticed him earlier that day helping her neighbor move out of a nearby apartment. L. V. accepted the man's offer. After they had loaded items onto L. V.'s truck for about three hours, L. V. no longer needed the man's help and agreed to drive him home. They got into the truck, and the man directed L. V. to a house that was isolated down a winding road. When L. V. stopped the truck in the driveway, the man revealed a knife and ordered her to turn off the vehicle lights. For almost three hours, the man repeatedly forced L. V. to engage in sexual intercourse with him and to perform oral sex upon him. He constantly brandished the knife and verbally threatened to kill her; periodically, he struck her about the face and forehead. The man claimed that he had attacked before. L. V. testified, "He told me he normally does it to prostitutes, people that nobody would believe if they said they were raped. He said, I do it to what we call nobodies. People that walk the strip that nobody would believe." After the man ejaculated, he took the $88 L. V. had in her purse, then walked away baring most of his body, including his chest and arms. L. V. reported the incident to police and went to a hospital.

The nurse who attended L. V. testified that L. V. was emotionally

---

[1] Selfe v. State, 290 Ga. App. 857, 858 (1) (660 SE2d 727) (2008) (emphasis omitted), quoting Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] Segel v. State, 293 Ga. App. 506 (1) (a) (667 SE2d 670) (2008).

distressed, crying, and rocking back and forth. Bruising was appearing on her cheeks. L. V. reported to the nurse what had happened to her, and a rape kit was obtained.

That same night, L. V. gave a detective a description of her attacker, including a scar she had noticed on his face. The detective subsequently showed her a photographic lineup.[3] From the lineup, she identified a man as her attacker, but mentioned that the photograph did not show the scar she had noticed on her attacker's face. After the identified man gave a DNA sample, however, he was excluded as a suspect.

By May, the police had received a tip from L. V.'s former neighbor whom L. V.'s attacker had helped move just before offering his help to L. V. The tip, which included that the man was known as "Rambo," led the detective to appellant Sanders. Two detectives questioned Sanders concerning L. V.'s allegations about the evening in question. Sanders admitted that he had engaged in sexual intercourse and oral sex with L. V. and claimed that the acts were consensual. During that interview, the detectives obtained buccal swabs from Sanders for DNA testing. Testing results showed that the DNA on Sanders's buccal swabs matched sperm cell DNA found on L. V.'s vaginal, cervical, and inner thigh swabs that had been obtained as part of the rape kit.

The state also presented similar transaction evidence through the testimony of two other women. The first woman, K. D., testified that in 1989, when she was 28 years old and dealing with a drug habit, a man she had seen "around the neighborhood" approached her as she was walking near her residence at Kingston Gardens Apartments in Macon. The man wielded a knife, grabbed her, and forced her into an empty apartment, where he made her smoke cocaine, repeatedly raped her, periodically beat her, verbally threatened to kill her, and told her that the police would not believe any report by her because the cocaine in her system would be discovered. She escaped about eight hours later by jumping out of a window. K. D. subsequently told police about the incident, identifying Sanders as her attacker from a photographic lineup and reporting that the man was known as "Rambo." When police questioned Sanders about K. D.'s report, he claimed that she had agreed to have sex with him in exchange for crack cocaine.

The second woman, V. R., testified that in 1990, when she was 28 years old and addicted to drugs and alcohol, a car stopped beside her as she was walking down a street in Macon. A man she did not know got out of the car, struck her in the head, and dragged her into the

---

[3] Sanders's photograph was not included in the lineup.

car. She remembered next that the man was pulling her out of the car and into an abandoned building. There, he brandished a knife, smoked marijuana, struck her head and body, and raped her. He told her that his name was Samuel Sanders, that he was known as "Rambo," that he had attacked other people before, but that she would not live to report anything to anyone because he planned to kill her. But she escaped and reported to police that she had been raped by a man known as "Rambo." She identified Sanders as her assailant from a photographic lineup. When police questioned Sanders about V. R.'s report, he claimed that she had agreed to have sex with him in exchange for drugs. On cross-examination, Sanders's attorney elicited V. R.'s testimony that she had been convicted of prostitution in 1993.

Sanders was the sole defense witness. He acknowledged that he was known as "Rambo," but denied having committed crimes against any of the three women. He recounted that he had just been released from prison when he met L. V. After he helped her load her items onto the truck on the day in question, they left her apartment to look for a place to have sex. She parked the truck a short distance away, and they engaged in sexual activity with her consent.

Sanders claimed that K. D. was one of his "crack smoking buddies." He recalled the day she ended their encounter by jumping out of a window. He testified that they had been smoking crack together, but had not engaged in any sexual activity. On cross-examination, Sanders acknowledged that he had told the detective investigating K. D.'s report that he had engaged in sex with K. D. He testified that he had lied to the detective.

Sanders also claimed that V. R. was his "smoking buddy." He recalled the day she got into the car with him and they went to a building, where they engaged in sex. According to Sanders, V. R. had voluntarily gotten into the car, entered the building, smoked crack, and engaged in sex with him in exchange for the drug. He testified that only after she discovered that there was no more crack did she run outside and scream that he had raped her.

On appeal, Sanders contends that the state's evidence fell short of proving his guilt beyond a reasonable doubt. He asserts that L. V.'s testimony was insufficient, pointing out that, after spending approximately six hours with the man who attacked her, she identified someone other than him (Sanders). In addition, he points to evidence that L. V. never mentioned to police that her attacker had tattoos, citing his testimony that he has had several tattoos on his chest and arms since about 1980 and her testimony that the attacker had bared his chest and arms. Sanders also argues that the DNA test results and similar transactions should have been excluded. And he claims that his testimony provided a reasonable explanation for the pres-

YALE LAW LIBRARY

ence of his DNA on L. V.

As discussed below in Divisions 2 and 3, Sanders has demonstrated no merit in his arguments that the DNA test results and similar transactions should have been excluded. His remaining arguments concern

> evidentiary weaknesses, conflicts, or inconsistencies [and were] for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[4]

2. Sanders argues that the trial court erred in denying his motion to exclude the DNA test results, asserting that his buccal swabs were obtained illegally. At the suppression motion hearing, Sanders adduced uncontroverted evidence that the detectives did not have a warrant to seize any sample of his bodily fluid or substance; nor did the detectives obtain his written consent in taking the sample. In addition, Sanders testified at the motion hearing that he had not verbally consented to provide the buccal swabs, but that after one of the detectives revealed that he had come for a swab test, "[the detective] just stuck [a swab] in my mouth. I didn't, I mean really I didn't have time to deny it or what, you know. It just happened so quick."

But contrary to Sanders's account, both detectives testified at the motion hearing that the buccal swabs were obtained only after Sanders consented to give a sample of his DNA. They recounted telling Sanders that they were there to investigate L. V.'s rape allegation of February 17, 2007; that Sanders waived in writing his *Miranda* rights; that one of the detectives asked for a DNA sample; that Sanders appeared to understand what was occurring; that Sanders verbally agreed to provide a sample by buccal swabs; and that he then "opened his mouth wide" without hesitation and without either detective putting a hand on Sanders to force his mouth open.

The detectives' version of what occurred amply supported the trial court's determination that Sanders freely and voluntarily verbally consented to provide the buccal swabs to the detectives.[5]

---

[4] *Segel*, supra at 507 (punctuation and footnotes omitted); see OCGA §§ 16-5-40 (defining kidnapping); 16-6-2 (a) (2) (defining aggravated sodomy); 16-6-1 (a) (1) (defining rape); 16-8-40 (a) (2) (defining robbery by intimidation).

[5] See *Heckman v. State*, 276 Ga. 141, 145 (2) (576 SE2d 834) (2003); *State v. Harris*, 236 Ga. App. 525, 528 (2) (a) (513 SE2d 1) (1999) (if oral consent was freely and voluntarily given,

Because this determination was therefore not clearly erroneous, we must defer to it.[6]

3. Sanders argues that the trial court erred by allowing K. D.'s and V. R.'s testimony, asserting that the evidence impermissibly impugned his character.

> [A] similar transaction is properly admitted if there is sufficient evidence that the accused committed the offense or act and there is a sufficient connection or similarity between the offense and the crime charged, so that proof of the former will tend to ·prove the latter; however, the evidence is not to be admitted if it is done so merely to raise an improper inference about the character of the accused.[7]

> An appellate court will not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous. And, the proper focus is on the similarity of the prior incidents to the crimes charged, not their differences.[8]

At the hearing on the admissibility of the evidence as similar transactions, the state asserted that the incidents demonstrated Sanders's course of conduct, intent, modus operandi, and lustful disposition. Sanders contends, however, that those incidents were not sufficiently similar to the incident underlying the instant case. In addition, he asserts that K. D.'s and V. R.'s identifications of him were unreliable because neither of them described her attacker physically and because neither described his tattoos. Sanders further claims that because he was not prosecuted in connection with what occurred to either woman, it is doubtful that there was sufficient evidence to prove that he committed crimes upon them.

The record shows that shortly after being attacked, K. D. and V. R. identified Sanders as their assailant from photographic lineups; they also reported his name as "Rambo," which he was known as at the time of L. V.'s attack. And as the state argued, evidence of K. D.'s and V. R.'s ordeals with Sanders was probative of his course of

---

written consent was not necessary).

[6] See *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous; where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review).

[7] *Humphrey v. State*, 281 Ga. 596, 598 (2) (642 SE2d 23) (2007) (citation omitted).

[8] *Carr v. State*, 282 Ga. 698, 700-701 (2) (653 SE2d 472) (2007) (citations and punctuation omitted).

conduct, intent, modus operandi, and lustful disposition to isolate women of about the same age and located in Macon, employ against them actual violence and threat of death, and sexually assault them. Moreover, K. D.'s and V. R.'s testimony corroborated L. V.'s testimony of Sanders's claim to her that his previous attacks had been upon individuals he had determined "nobody would believe." Because the record shows that the trial court's findings were not clearly erroneous, its rulings allowing the similar transaction evidence will not be disturbed.[9]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED MAY 15, 2009.

*Tera E. Edwards*, for appellant.
*Howard Z. Simms, District Attorney, Nancy S. Malcor, Dorothy V. Hull, Assistant District Attorneys*, for appellee.

---

[9] See *Humphrey*, supra; see also *Davis v. State*, 279 Ga. 786, 788 (3) (621 SE2d 446) (2005).