## A09A0444. MAYHEW v. THE STATE.
### (682 SE2d 594)

PHIPPS, Judge.

After a jury trial, Ron Forrest Mayhew was convicted of disorderly conduct toward Virginia Cochran and of obstruction of the law enforcement officer attempting to quell and investigate the incident. On appeal, Mayhew challenges the sufficiency of the evidence, claims that the trial court impermissibly restricted his cross-examination of Cochran, and asserts that his right to a fair trial was violated when deputy sheriffs approached and escorted his wife out of the courtroom in the presence of prospective jurors. For reasons that follow, we affirm.

1. When an appellant challenges the sufficiency of the evidence to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] The appellant no longer enjoys a presumption of innocence, and an appellate court determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of the witnesses.[2]

The state called Cochran to testify about the underlying incident of June 2, 2006. She recalled having had business dealings with Mayhew in the early 2000s through her job at a bank, where Mayhew had once gotten "in [her] face" and accused her of forging his signature on various bank documents. Years later, on the day in

---

[1] *Selfe v. State*, 290 Ga. App. 857, 858 (1) (660 SE2d 727) (2008) (punctuation and emphasis omitted), quoting *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[2] *Segel v. State*, 293 Ga. App. 506, 507 (1) (a) (667 SE2d 670) (2008).

question, Mayhew approached her while she was shopping at a drug store. In a loud voice, he asked her whether she had been forging any documents lately, told her that she had ruined his life, warned her that she was "going to pay," and called her a bitch, a whore, and a crook, among other names. She attempted to get away from Mayhew by walking to another aisle, but he followed her. Cochran went to the pharmacy counter, where she knew there would be other people. She asked an employee to call 911. Mayhew trailed her to the pharmacy counter and continued his attack. Throughout the confrontation, Mayhew spoke loudly; he also pointed his fingers at her, stood within arms reach of her, and at times "was close enough [she could] almost feel his breath." When Mayhew realized that Cochran had requested emergency police assistance, he retorted that he wanted her to call 911 and that he wanted her to appear before a judge. Cochran testified that she felt afraid and in danger. When the pharmacist told her that emergency help was on the way, she felt somewhat relieved. She did not go outside because she did not feel it was safe to do so. Instead, she waited for the police near the pharmacy counter, where there were other people and she therefore felt safer. Cochran recounted that, when a police officer arrived and began to investigate the disturbance, Mayhew remained defiant; he "didn't shut up the whole time," but continued to holler and even professed, "I'm ready to go to jail."

The state called several eyewitnesses to the episode to give their accounts. A pharmacy worker testified that she heard a man yelling, calling someone a whore and asking that person about "who she was sleeping with." He also recalled that when Cochran and Mayhew reached the pharmacy counter, Cochran asked store personnel to call for emergency help and was otherwise quiet.

Another store employee recalled Mayhew screaming at Cochran, calling her a whore, asking her about "who was she sleeping with at the bank," and then following her to the pharmacy counter. This employee described Mayhew's demeanor as hateful and angry and described that Cochran had remained calm and that she never raised her voice.

A customer who was being helped at the pharmacy counter when the confrontation began testified that he heard a man calling someone a whore and a slut. When he looked in the direction of the commotion, he saw Cochran, whom he had known for a long time. She walked toward him; Mayhew followed her and continued to yell at her. The customer testified that he had then admonished Mayhew that he should refrain from his conduct; that Mayhew had stopped briefly only to glare at him; and that Mayhew then resumed his verbal attack upon Cochran. The customer testified that Cochran was "scared to death," appeared afraid to leave the pharmacy area,

and made no attempt to do so. The customer testified that he, however, was late for work, and when a police officer arrived, he hurriedly left. He testified that, when he left, he did not believe that Cochran was in any physical danger.

A uniformed police officer responded to the emergency call. He testified that when he walked into the store, he heard a man "hollering real loud." At the pharmacy area, the officer saw Mayhew "right up in [Cochran's] face," screaming at her, calling her a bitch and a whore, and pointing his index finger at her. He testified that Cochran was just standing there, saying nothing, staring at the floor, cowering, shaking, and on the verge of tears. In an attempt to quell and investigate the disturbance, the officer asked Mayhew to calm down, step and remain aside, and allow him to interview Cochran before interviewing him. Mayhew stepped aside for only seconds, remaining irate and continuing to raise his voice, before approaching the officer and Cochran. The officer again asked Mayhew to calm down and step back, reminding him that he would interview him next. Mayhew stepped back, continued to yell, and then approached the officer and Cochran again. For the third time, the officer gave Mayhew the same instructions. The officer advised Mayhew that he could not cause such a disturbance in public places, but Mayhew retorted that the drug store was as good a place as any and maintained his level of irateness. The officer testified that Mayhew's failure to comply with his requests was hindering his investigation, interfering with his efforts to quell the disturbance, and thwarting his attempt to interview Cochran. The officer placed Mayhew under arrest.

The assistant store manager testified that she had followed the responding officer to the pharmacy counter and found an "obvious confrontation." She testified that Mayhew was "in [Cochran's] face fussing"; he was pointing his finger in her face; and "it looked like he could have just knocked her upside the head." Cochran appeared scared and very upset. The manager testified that, when the officer talked to Mayhew, he refused to comply with various of the officer's requests and challenged the officer to arrest him and take him to jail.

Mayhew neither testified nor called any witnesses.

(a) *Disorderly Conduct*. OCGA § 16-11-39 (a) (1), the provision under which Mayhew was tried, states that disorderly conduct is committed when a person "[a]cts in a violent or tumultuous manner toward another person whereby such person is placed in reasonable fear of the safety of such person's life, limb, or health." The indictment alleged that Mayhew did

act in a violent and tumultuous manner in the presence of Virginia Cochran, by getting in her face, pointing with a

finger and calling her a bitch and a whore, asking her who she was sleeping with, and accusing her of forging signatures, whereby she was placed in reasonable fear for her health and safety.

Mayhew contends that the state's evidence did not authorize the jury to find beyond a reasonable doubt that Cochran was placed in the requisite fear. He asserts that although he was loud, used offensive language, and called Cochran unflattering names, he neither touched her, nor verbally threatened to do so. He points out that there was no evidence that she attempted to leave the store. He cites testimony that he claims showed that, during the confrontation, she felt safe and remained calm. He claims that the evidence showed that Cochran's acquaintance, who was a customer at the pharmacy counter, had done little to protect her and then hurriedly left the store because he did not believe that she was in any physical danger. Mayhew claims that the evidence showed that, prior to the police arriving, the confrontation had lasted less than a minute. He cites the police officer's estimate that he (Mayhew) had come no closer than three feet of Cochran, as well as the officer's acknowledgment that he had not recorded in his police report that he had observed Cochran cowering, shaking, or on the verge of tears.

But any evidentiary weaknesses, conflicts, or inconsistencies are for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, we must uphold the jury's verdict.[3]

(b) *Obstruction of a Law Enforcement Officer*. OCGA § 16-10-24 (a), the provision under which Mayhew was tried, states that obstruction of a law enforcement officer is committed when a person "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." Mayhew argues that the jury was not authorized to find him guilty of this crime based solely upon the fact that he continued to speak.

But Mayhew's conviction was not based upon that fact only. The indictment alleged that Mayhew had committed the offense

by refusing to comply with verbal commands given by [the police officer], to wit: while speaking to the victim during an investigation of the offense [of disorderly conduct], [the

---

[3] *Segel*, supra at 507 (1) (a) (footnotes and punctuation omitted).

police officer] repeatedly instructed accused to calm down,
to stop being loud and irate, to step back from where he, the
officer, was interviewing the victim.

The state adduced evidence to support these allegations. The question whether Mayhew's refusal to obey the police officer's commands "had the effect of hindering or obstructing the officer[ ] was for the [trier] of fact to decide."[4] Applying the standard of *Jackson v. Virginia*,[5] we find no merit in Mayhew's challenge to the sufficiency of the evidence.[6]

2. Mayhew contends that the trial court impermissibly restricted his cross-examination of Cochran on the issue whether she was in reasonable fear during the confrontation. The record citation provided by Mayhew shows the following:

Q: Well, you understand, do you not, that unless the State proves reasonable fear there can be no conviction for disorderly conduct here? You understand that, correct?
A: Is there —

The prosecutor interjected, "Again, your Honor, calls for a legal conclusion on the part of the witness." The court responded, "Sustain that objection." At Mayhew's motion for new trial hearing, the court explained its earlier ruling by stating that the wording of the question was improper in that it called for the witness to testify as to her understanding of what the state had to prove.

Although a defendant is entitled to a thorough and sifting cross-examination as to all relevant issues, the trial court, in determining the scope of relevant cross-examination, has a broad discretion. Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish.[7]

---

[4] *Imperial v. State*, 218 Ga. App. 440, 441 (461 SE2d 596) (1995) (citations and punctuation omitted); see *Weidmann v. State*, 222 Ga. App. 796, 797 (2) (476 SE2d 18) (1996) ("Whether the evidence in a particular case establishes that the actions taken hindered or obstructed the officer . . . is for the trier of fact to decide.") (citation omitted).

[5] Supra.

[6] See *Imperial*, supra; see also *Weidmann*, supra (recognizing that the Code provision was made purposefully broad to cover actions that might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties).

[7] *Junior v. State*, 282 Ga. 689, 691 (2) (653 SE2d 481) (2007) (citations and punctuation omitted).

The cross-examination at issue sought "to allow a witness to testify what the law is. Witnesses must testify to facts, and the court is responsible for the law."[8] Because Cochran's understanding of what the state was required to prove has not been shown relevant, the court did not abuse its discretion in curtailing questioning thereupon.[9]

3. Mayhew complains that the "deputies arrested [his wife] in the presence of the jurors for an outstanding warrant relating to a landlord/tenant matter she had (unrelated to this case)."

At the motion for new trial hearing, Mayhew's wife testified that, while she was sitting directly behind her husband in the courtroom, two deputy sheriffs approached her and asked her to step outside because they needed to serve her and that she had stood and walked out with the two officers. She testified further that the officers did not touch her in the courtroom and that she later returned to the courtroom. Mayhew's wife testified that two jury panels had been in the courtroom to observe what occurred there and that several of the prospective jurors knew that she was the defendant's wife.

Mayhew argues that the deputy sheriffs' actions were taken merely to embarrass and prejudice him. He asserts that the trial court had the responsibility to control courtroom proceedings, complains that the trial court gave no explanation to the prospective jurors, and maintains that he is entitled to a new trial. However, Mayhew has failed to show that he requested any action by the trial court at that time. Consequently, as the trial court concluded at the new trial hearing, this issue was waived.[10]

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED JUNE 30, 2009 —
RECONSIDERATION DENIED JULY 23, 2009 

*Romin V. Alavi, Steven H. Sadow*, for appellant.

---

[8] *Taylor v. State*, 204 Ga. App. 489 (3) (419 SE2d 745) (1992) (citation and punctuation omitted).

[9] See *Cheesman v. State*, 230 Ga. App. 525, 527-528 (4) (497 SE2d 40) (1998) (in trial upon drug charges, court did not err in preventing defense from questioning agent of sheriff's office as to his own definition of "possession" because that was a question of law to be addressed by the court); *Taylor*, supra at 489-490 (the extent of the witness's personal knowledge as to the "legal limit for DUI in this state" was not a relevant factual inquiry and thus was inadmissible).

[10] See *Smith v. State*, 294 Ga. App. 692, 701-702 (9) (670 SE2d 191) (2008) (defendant may not observe what he thinks is an injustice, fail to bring it to judge's attention at a time when corrective action may be had, take a chance on a favorable verdict, and then when the verdict is unfavorable have a new trial because of what occurred).

*Joe W. Hendricks, Jr., District Attorney, Michael P. Baird, Assistant District Attorney*, for appellee.