## S02A1881. SMITH v. THE STATE.
### (577 SE2d 548)

THOMPSON, Justice.

Defendant Eric Deandre Smith was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the death of Derrick Colbert.[1] He appeals, asserting, inter alia, he was denied the right to open and conclude closing argument because the trial court required him to put into evidence a certified copy of a witness' sentence under the First Offender Act. Finding no reversible error, we affirm.

1. Viewing the evidence in a light to uphold the verdict, we find the following: On the day in question, Toronto Burdett, who was Smith's half-brother, Billy Ladson, and Carlos White, all of whom were armed, approached Colbert in the parking lot of an apartment complex. Smith came on the scene suddenly. He was carrying an assault weapon which appeared to be an AK-47 and he was garbed in black.

Smith accused Colbert of killing his father. Then he shot Colbert numerous times in the head, torso and extremities. Colbert died immediately.

Smith and Burdett left the scene in Burdett's automobile. Within days of the shooting, Smith told another brother and Burdett's girlfriend that he (Smith) shot Colbert.

Smith was arrested approximately two weeks later when a police

---

[1] Colbert was killed on September 14, 2000. One month later, the grand jury indicted Smith, Toronto Ontario Burdett, Billy Darnte Ladson and Carlos Marquez White, and charged them with malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. (White was also charged with possession of a firearm by a convicted felon.) Smith and Burdett were tried together beginning February 26, 2001. Smith was convicted on all counts and, on March 8, 2001, he was sentenced to life for malice murder, plus five years (consecutive) for the firearm charge. (The felony murder and aggravated assault charges were merged with the malice murder charge for sentencing purposes.) Smith's timely filed motion for a new trial was denied on February 20, 2002. Thereafter, Smith sought, and was granted, an out-of-time appeal; he filed a notice of appeal on June 13, 2002. The case was docketed in this Court on August 22, 2002, and submitted for a decision on the briefs on October 14, 2002.

officer saw him shooting another AK-47. Again, Smith was dressed entirely in black.

The evidence is sufficient to enable any rational trier of fact to find Smith guilty beyond a reasonable doubt of malice murder and possession of a firearm during the commission of a felony. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Smith contends the trial court erred in requiring him to introduce into evidence the first offender record of a witness for the State whom Smith cross-examined. In this regard, Smith asserts that the trial court's ruling caused him to lose the right to open and conclude closing argument.

On cross-examination, Smith asked the witness if he was currently on probation as a first offender. When the witness answered affirmatively, the prosecutor asserted that in order to impeach the witness, it was incumbent upon Smith to introduce a certified copy of the witness' "conviction." Defense counsel responded that she was not trying to impeach the witness; she was only questioning him about his first offender status to show bias. She also stated that she did not want to proffer evidence because she did not want to waive the right to open and conclude closing argument. Defense counsel's protestations notwithstanding, the trial court required defense counsel to introduce the witness' first offender record, and she did so.

At one time, it was permissible to impeach a witness with a first offender sentence. See *Favors v. State*, 234 Ga. 80, 86 (3) (214 SE2d 645) (1975).

> But in the recent decision of *Matthews v. State*, 268 Ga. 798, 801-803 (4) (493 SE2d 136) (1997), [this Court] held that a witness may not be impeached by evidence of a first offender sentence in the absence of an adjudication of guilt. "The first offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered. [Cits.]" *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998)[;] *Buffington v. State*, 228 Ga. App. 810, 812 (492 SE2d 762) (1997).

*Hall v. State*, 235 Ga. App. 44, 47 (6) (508 SE2d 703) (1998). Thus, even if Smith were attempting to impeach the witness, rather than point to bias, it would appear that the trial court erred in requiring defendant to introduce the witness' first offender record into evidence. But Smith was not trying to impeach the witness on general

credibility grounds; he was attempting to show the witness' bias. See *Scott v. State*, 242 Ga. App. 850, 851 (527 SE2d 210) (1999).

The Confrontation Clause of the Sixth Amendment guarantees a defendant in a criminal case the right to show the possible bias of a witness by cross-examining him concerning pending criminal charges or a pending probation revocation. *Turtle v. State*, 271 Ga. 440, 444 (4) (520 SE2d 211) (1999); *Hines v. State*, 249 Ga. 257, 259 (2) (290 SE2d 911) (1982); *Scott v. State*, supra at 851-852. However, certified copies of court documents relating to such matters are not admissible. *Turtle v. State*, supra. These same rules logically apply to first offender probation status because in that situation there has not been an adjudication of guilt and the matter remains pending. See OCGA § 42-8-60. Thus, Smith should have been permitted to cross-examine the witness regarding his first offender treatment to show bias without being required to introduce documents of the witness' first offender status. It follows that (1) the trial court erred in requiring Smith to introduce the witness' first offender record and (2) Smith should not have lost the right to open and conclude argument. *Lane v. State*, 274 Ga. 751, 753 (559 SE2d 455) (2002). However, we find that the error in this regard was harmless. See *McDuffie v. Jones*, 248 Ga. 544, 546 (2) (283 SE2d 601) (1981) (right to make final argument is important right and harm is presumed when it is erroneously abridged; however, the presumption is not absolute and the error may be shown to be harmless).

The evidence against Smith was overwhelming. Three witnesses identified Smith as the shooter. Another witness, who overheard Smith say he was going to kill the victim to avenge his father's death, placed Smith at the scene with a gun. And two other witnesses averred that Smith told them he killed the victim. At the time of the murder, Smith was dressed in black; he used something akin to an AK-47 to shoot the victim. Two weeks later, at the time of his arrest, Smith again was dressed in black, and he was carrying an AK-47.

Smith was erroneously denied the right to conclude the argument; but he was not denied the right to argue his case; and he did so. See *McDuffie v. Jones*, supra at 548. In light of the overwhelming evidence against Smith, it is highly probable that the denial of the right to conclude argument did not contribute to the verdict. Compare *Givens v. State*, 264 Ga. 522, 523 (1) (448 SE2d 687) (1994) with *McDuffie v. Jones*, supra. See also *Monroe v. State*, 272 Ga. 201, 202 (528 SE2d 504) (2000).

3. Smith contends the trial court erred in denying a motion for mistrial which was premised on prosecutorial misconduct. In this regard, Smith asserts the prosecution failed to disclose that it reached a deal with one of its witnesses (to dismiss several warrants)

in violation of *Brady* and *Giglio*.[2] We find no abuse of discretion in the denial of the mistrial motion. See *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999). After Smith moved for a mistrial, the witness returned to testify and the circumstances surrounding any deal between the prosecution and the witness were made known to the jury. Moreover, Smith fully probed those circumstances on cross-examination. Thus, it cannot be said that the prosecution had engaged in misconduct which would have affected the outcome of the jury's deliberations, see *Coleman v. State*, 271 Ga. 800, 801 (2) (523 SE2d 852) (1999), and warranted the grant of a mistrial.

4. The trial court did not abuse its discretion in admitting into evidence the circumstances surrounding Smith's arrest. *Benford v. State*, 272 Ga. 348, 350 (528 SE2d 795) (2000). The circumstances were relevant to the charged crime and they were admissible, even if they incidentally put Smith's character in issue. *Dukes v. State*, 273 Ga. 890, 893 (4) (548 SE2d 328) (2001); *Ivester v. State*, 252 Ga. 333, 335 (313 SE2d 674) (1984).

5. The trial court erroneously charged the jury that it could infer the intent to kill from the *intentional* use of a deadly weapon. *Harris v. State*, 273 Ga. 608, 610 (2) (543 SE2d 716) (2001). However, the evidence of malice was overwhelming. Thus, it is highly probable that the error did not contribute to the judgment, and the error must be deemed harmless. *Scott v. State*, 275 Ga. 305, 306 (5) (565 SE2d 810) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 24, 2003.

*Tara L. Kneller*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Pawlak, Assistant Attorney General*, for appellee.

---

[2] *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963); *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).