## S09A0702. TREADWELL v. THE STATE.

(684 SE2d 244)

HINES, Justice.

Paul Treadwell appeals his convictions for felony murder and robbery in connection with the fatal assault upon Joel Sellers. Treadwell challenges testimony by State's witnesses regarding statements by the victim; testimony by the medical examiner about the cause of the victim's death; the admission into evidence of the death certificate; the admission into evidence of Treadwell's prior conviction for voluntary manslaughter; and the sufficiency of the evidence

of his guilt. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts shows that on the morning of July 27, 2006, Gary Lann and his wife discovered their 81-year-old neighbor, Joel Sellers, lying in their driveway. Sellers was naked, "except for his shirt and it was unbuttoned." He had crawled from his house to Lann's and his clothes were strewn between the two houses. When Lann questioned Sellers about what had happened, Sellers asked Lann to get his pistol, and said that Paul Treadwell had taken it. An ambulance arrived and Sellers was transported to a hospital in Telfair County for treatment. As Lann gathered Sellers's clothes he noticed that the car that had belonged to Sellers's deceased wife was missing from Sellers's driveway; Sellers never let anyone use that car. Lann also discovered that the door to Sellers's house was locked.

On the same morning, Johnny Smith, the chief deputy of the Telfair County Sheriff's office, interviewed Emily Garrison, who was the clerk at a local convenience store; Garrison had contacted police out of concern for Sellers, who was one of her regular customers, because he had not come into the store for several days. Sellers came into the store "every day to drink coffee and hang around and talk." Also, Garrison had seen Treadwell driving the car belonging to Sellers's deceased wife.

Shortly after speaking with Garrison, Deputy Smith learned that Sellers was at the hospital. Smith went to the emergency room, where medical staff had just started examining Sellers. Sellers told Smith that Treadwell had "put [him] down," taken his keys, hurt him, hurt his shoulder, took his car, and locked him out of his house. Sellers also stated that Treadwell had taken his pistol.

Later that day after receiving a tip about the location of Sellers's missing car, Lann spotted Treadwell in the city of McRae. Lann contacted police and led them to Treadwell. Treadwell was arrested. When Lann went to the hospital that evening to visit Sellers, Sellers again told him "to get his pistol," and he stated that Treadwell had taken the pistol, had locked him out of his house, and that he could not get back into the house.

Sellers's nephew, Don Bellflower, also visited him in the hospital. Bellflower observed that Sellers was "all bruised and beat up," had

---

[1] The crimes occurred on July 26, 2006. On November 6, 2006, a Telfair County grand jury indicted Treadwell for malice murder and robbery. Treadwell was tried before a jury August 28-30, 2007, and was found guilty of felony murder and robbery. On August 30, 2007, he was sentenced to life in prison for the felony murder and a consecutive ten years in prison for the robbery. A motion for new trial was filed on September 25, 2007, amended on November 13, 2008, and denied on December 17, 2008. A notice of appeal was filed on December 19, 2008, and the case was docketed in this Court on January 15, 2009. The appeal was submitted for decision on March 9, 2009.

blood coming out of his right ear, and kept complaining that his head hurt. Sellers told Bellflower that Treadwell had "been aggravating him for a while and trying . . . to move in . . . took his car and had his keys; took his pistol and . . . just wouldn't leave him alone. Shut him out of his house." Bellflower later went to check on Sellers's house, which normally was neatly kept, and noticed that it appeared to be in some disarray. Several items, including a .22 caliber pistol and bags of old silver coins, were missing. While attempting to straighten up Sellers's house, Bellflower found a hospital band bearing Treadwell's name and birth date wedged between the sofa cushions. Furthermore, when Bellflower retrieved Sellers's car from the police impound lot he found a box in the trunk. The box contained keys as well as prescription drugs for Paul Treadwell and parking citations and other documents issued to Paul Treadwell.

At the hospital, Sellers told his niece, Molly Austin, that "the man beat me up and he kicked me and he got my money and he got my clothes, he got all my tools." Sellers stated that he "kept trying to get up and get some of the items back and . . . the man kept knocking him down and kicking him."

Sellers's primary care physician, Dr. William J. Briggs III, diagnosed Sellers as suffering from a concussion and severe muscle damage. Sellers was transferred to another hospital, and then spent the next several weeks alternating between being admitted to the hospital and staying at a nearby nursing home. Sellers died at the nursing home approximately six weeks after he was attacked.

The medical examiner determined that the underlying cause of Sellers's death was an assault, and that the assault had resulted in multiple complications including dehydration, rhabdomyolysis (breakdown of the muscles), and kidney failure.

1. Treadwell contends that the trial court committed harmful error in allowing statements of the victim to be repeated through the in-court testimony of State's witnesses Lann, Bellflower, Austin, and Smith.

(a) Treadwell asserts that Lann's testimony about Seller's statements to him while waiting for the ambulance was not properly allowed under the necessity exception to hearsay set forth in OCGA § 24-3-1,[2] as the statements were unreliable because of Sellers's then physical and mental condition. He further argues that admission of Lann's testimony about Sellers's statements to him at

---

[2] OCGA § 24-3-1 provides:
(a) Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons.
(b) Hearsay evidence is admitted only in specified cases from necessity.

the hospital violated his Sixth Amendment right to confrontation and was error under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

"There is a distinct difference between a challenge to the admission of evidence based upon the Confrontation Clause and that based upon an exception to the hearsay rule." *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004). Treadwell failed to object to the admission of Lann's testimony as violative of his right of confrontation and as error under *Crawford*; therefore, this alleged *Crawford* violation is not properly considered on appeal. *Walton v. State,* supra at 434 (1).

As to the claim that Lann's testimony about Sellers's pre-hospital statements was inadmissible under the necessity exception to hearsay because the statements were untrustworthy due to Sellers's condition after the assault, it is unavailing. First, it should be noted that in circumstances like the present, such out-of-court declarations, i.e., immediate pleas by the victim for assistance following the criminal acts, have been deemed to be part of the res gestae. *Williams v. State*, 202 Ga. App. 82, 84 (413 SE2d 256) (1991). However, pretermitting whether the victim's statements to his neighbor Lann were admissible under the rationale of res gestae, they were admissible under the necessity exception.

> For hearsay to be admitted under the necessity exception, the proponent must establish that the testimony is necessary, that there are particularized guarantees of trustworthiness connected to the declarant's statements, and that the hearsay statements are more probative and revealing than other available evidence.

*Miller v. State*, 283 Ga. 412, 414 (2) (658 SE2d 765) (2008). Whether there were particularized guarantees of trustworthiness was a matter for the trial court's discretion, and the trial court's decision must be upheld on appeal absent an abuse of that discretion. *Jackson v. State*, 284 Ga. 826, 827 (2) (672 SE2d 640) (2009). Here, the circumstances of the victim's state at the time the statements were made were well known to the trial court. Moreover,

> [a] trial court does not abuse its discretion when it admits under the necessity exception hearsay testimony consisting of uncontradicted statements made by an unavailable witness to individuals in whom the declarant placed great confidence and to whom the declarant turned for help with problems.

*Id.*[3] This was plainly the situation between Sellers and Lann. Sellers was related to Lann's wife by marriage. Sellers and Lann were neighbors and saw each other almost every day. Sellers could not read or write, so when he received mail he would bring it to Lann to read to him. Sellers grew vegetables for Lann, and Lann brought meals to Sellers. Theirs was shown to be a close relationship. In addition, the trustworthiness of the statements is further guaranteed by the fact that the statements were, in effect, immediate outcries of the victim to a neighbor for help. *Williams v. State*, supra at 84.

(b) Treadwell next maintains that Sellers's hospital statements were erroneously allowed into evidence through the in-court testimony of Sellers's nephew, Bellflower. He urges that the statements were testimonial in nature, and therefore, allowing their repetition was violative of *Crawford*. He further argues that even if the statements were not testimonial, they lacked sufficient guarantees of trustworthiness for admission under the necessity exception in that they were contradictory to the physical evidence and were made while Sellers was in the hospital under great stress.

Here again, Treadwell did not object to the admission of the testimony on confrontation grounds, and such contention is waived. *Walton v. State,* supra at 434 (1). As to the propriety of the testimony under the necessity exception, the trial court did not abuse its discretion in finding that the victim's statements to Bellflower were trustworthy. *Jackson v. State*, supra at 827 (2). Contrary to Treadwell's contention, he has not shown that the statements were contradicted by physical or other evidence. Furthermore, there was ample evidence that the uncle and nephew had a close relationship; in fact, Bellflower wanted Sellers to live close to him and Sellers was planning on moving onto Bellflower's property. And, there was no evidence of any motivation for Sellers to exaggerate or fail to tell the truth to Bellflower.

(c) There is likewise no merit to the claim that it was error to allow Sellers's niece, Austin, to relate the statements by her uncle. Any challenge under *Crawford* is not viable because it was not pursued as a basis for objection before the trial court. *Walton v. State*, supra at 434 (1). And, contrary to Treadwell's assertion, there was ample evidence to support the finding that the statements had particularized guarantees of trustworthiness, including the closeness of the relationship between Sellers and Austin. No abuse by the

---

[3] Contrary to Treadwell's assertion, he has failed to demonstrate contradictions in or with Sellers's statements.

trial court has been shown in allowing Austin's testimony. *Jackson v. State*, supra at 827 (2).

(d) Finally, Treadwell maintains that the statements made by Sellers to Deputy Smith at the hospital were made during the course of a police investigation, were therefore testimonial in nature, and that permitting Smith to testify about the statements violated Treadwell's right of confrontation under *Crawford*.

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U. S. 813, 822 (126 SC 2266, 165 LE2d 224) (2006). Assuming that the statements at issue are properly characterized as testimonial, as Treadwell maintains, their admission into evidence was harmless.

> [E]ven an error of constitutional magnitude such as a violation of the right of confrontation can be deemed harmless if it can be shown that there is not a reasonable probability that it contributed to the verdict; indeed, this Court has determined that a *Crawford* violation is harmless if the hearsay was cumulative of other evidence or if the evidence against the defendant was overwhelming.

*Humphrey v. State*, 281 Ga. 596, 599 (3) (642 SE2d 23) (2007). Here, the material facts contained in Sellers's statement which were related by Deputy Smith at trial were echoed by the testimony of several other witnesses. Moreover, the admissible evidence of Treadwell's guilt was overwhelming. Id.

2. Treadwell contends that the trial court committed harmful error by allowing the medical examiner to testify that Sellers's death was caused by complications "following an assault" because the statement was based on hearsay, in that the medical examiner came to that conclusion only after examining Sellers's medical records, and that this was a factual determination that should have been made by the jury. He urges consequently that the trial court erred by allowing the death certificate into evidence without redacting lan-

guage stating that the victim's death followed an assault.[4]

The medical examiner performed an autopsy on Sellers's body and reviewed Sellers's medical records in conjunction with his assessment of the cause of death. When an expert personally observes data collected by another, the expert's opinion is not objectionable merely because it is based, in part, on the other's findings, and even when such testimony is based on hearsay, the lack of personal knowledge does not result in exclusion of the expert's opinion but merely presents a jury question as to the weight it is to be given. *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008). Moreover, in attempting to determine the cause of death, a medical examiner is authorized to consider the circumstances surrounding the death; in fact, such consideration may be a necessity because of the state of the remains. *Wright v. State*, 285 Ga. 428 (677 SE2d 82) (2009). In this case, the medical examiner's consideration of Sellers's medical history was plainly warranted as the interval between the precipitating assault and the resulting death would have permitted the initial physical signs of the assault to subside. Furthermore, the medical examiner's finding that Sellers's death was the result of complications from an assault did not invade the province of the jury. See *Medlock v. State*, 263 Ga. 246, 248-249 (3) (430 SE2d 754) (1993). And, it was not error to refuse to redact the found cause of the victim's death from the death certificate.

3. Treadwell moved in limine to exclude as impeachment evidence his 1976 conviction for voluntary manslaughter if he chose to testify at trial. Citing OCGA § 24-9-84.1 (b),[5] the trial court denied the motion in limine, stating that if evidence of the conviction was used by the State, it would give a limiting instruction to the jury at that time. Treadwell contends that the trial court committed harmful error by this ruling inasmuch as the conviction was over 16 years old and the State failed to show and the trial court failed to find that the facts and circumstances outweighed the conviction's prejudicial effect. He further asserts that the ruling effectively denied him his right to testify at trial because he was "placed in the situation of being impeached by the inadmissible evidence."

The evidence was not inadmissible as a matter of law; by the

---

[4] The trial court granted Treadwell's request to redact the word "homicide" from the death certificate.

[5] OCGA § 24-9-84.1 (b) provides in relevant part:
Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . .

express terms of OCGA § 24-9-84.1 (b), the trial court is vested with the discretion to admit evidence of an older conviction in the interest of justice if its probative value substantially outweighs its prejudicial effect. Id.; *McNabb v. State*, 292 Ga. App. 395, 397-398 (1) (664 SE2d 800) (2008). Here, the trial court expressly found that the conviction had sufficient probative value for the purpose of impeachment on the issue of Treadwell's veracity. Pretermitting Treadwell's assertion that the trial court's findings were insufficient, Treadwell has failed to show that admission of the evidence was an abuse of the trial court's discretion. *McNabb v. State*, supra at 397-398 (1). As to the fact that Treadwell's decision not to take the stand was, in part or in whole, due to his concern about impeachment with the prior conviction, "[t]he prospect of impeachment and its raising doubts about the defendant's credibility are certainly proper considerations in the decision of whether to testify." *Crouch v. State*, 279 Ga. 879, 882 (3) (622 SE2d 818) (2005).

4. Lastly, Treadwell contends that the evidence was insufficient to support his convictions because there was no admissible evidence that he committed robbery or that Sellers's death was attributable to his conduct, and that there were many possible reasons why Sellers ended up in the road in distress.

In order to authorize a conviction based solely upon circumstantial evidence, the proved facts must be consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis save that of the guilt of the accused. *Smith v. State*, 284 Ga. 304, 306 (2) (667 SE2d 65) (2008). Whether every reasonable hypothesis except that of Treadwell's guilt was excluded was a question for the jury, and it was authorized to reject as unreasonable possibilities which were only theoretical, as those now offered by Treadwell. *Walker v. State*, 282 Ga. 406, 408 (1) (651 SE2d 12) (2007). The evidence was sufficient to enable a rational trier of fact to find Treadwell guilty beyond a reasonable doubt of the felony murder and robbery of Joel Sellers. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 28, 2009.

*Steven M. Harrison*, for appellant.
*Timothy G. Vaughn, District Attorney, Jason O. Waters, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.