686 S.E.2d 119 (2009)
WASHINGTON
v.
The STATE.
No. S09A0887.
Supreme Court of Georgia.
November 9, 2009.
*120 Barbara B. Claridge, Augusta, for appellant.
Rebecca A. Wright, District Attorney, Madonna M. Little, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General, for appellee.
NAHMIAS, Justice.
Sandy Washington was indicted along with Vernon Ryans, Jeremy Williams, and Andre Madison for malice murder, felony murder, and the possession of a firearm during the commission of a crime, all stemming from the shooting of Jeffrey Ellison. The felony murder count specified that they caused Ellison's death during the "commission of the felony of criminal damage to property in the first degree,. . . by shooting multiple bullets into the house in which . . . Ellison was located." Washington was tried separately, and Madison testified against him at trial. Washington was found guilty of felony murder and the firearm offense, and he now appeals, contending that the evidence is insufficient to support his felony murder conviction and that the trial court erred by not permitting him to cross-examine Madison about the details of a plea offer that Madison rejected.[1] We affirm.
1. Contrary to Washington's contention, the evidence is clearly sufficient to support his convictions. Madison testified that, around 5:00 p.m. on January 5, 2006, he, Jeremy Williams, Vernon Ryans, and Washington left the home of Ryans's aunt, and drove to the home of Zannie Worrell to rob him. They were all riding in Williams's car, with Williams driving and Ryans sitting in the front passenger seat. Washington was sitting behind Ryans, and Madison was sitting behind Williams. Madison testified that, when they saw Worrell's car in the front yard, they decided not to attempt a robbery. Ryans then stated that Worrell had put a $5,000 hit on Washington, Ryans, and Williams, and that he (Ryans) was going "to shoot the b___ up." According to Madison, Washington and Williams said they were going to shoot Worrell's car. Shortly thereafter, Washington asked Ryans if he was ready. Madison testified that Washington had a .380 caliber handgun, that he started shooting first, that Ryans had a 9mm handgun, and that he then started shooting. Madison testified that he and Williams did not participate in the shooting and that he did not have a gun.
Zannie Worrell testified that, late in the afternoon on January 5, 2006, he was watching television in his home with Ellison when numerous gunshots were fired at his house. After the shooting stopped, he saw that Ellison, who was sitting on a sofa, had been shot in the back of the neck. Ellison later died from his injuries.
*121 Solomie Sims, who lived next door to Worrell, testified that, on the evening of the shooting, she heard gunshots and looked out her door. She saw a car with four men in it speeding away from the crime scene. Thomas Bush, who is Williams's cousin and friends with Ryans, Washington, and Madison, testified that he was with the four co-defendants at Ryans's aunt's house on January 5, 2006. Bush testified that he saw the men leave about 5:00 p.m. in Williams's car. Bush's testimony placed the four co-defendants in the same positions in the car as Madison's testimony. Bush added that the group told him they were going to rob someone, that Washington had a .380 caliber handgun, and that another handgun was on the front seat between Williams and Ryans. According to Bush, the four co-defendants got back to the house about 7:30 p.m., and they were all sitting in the same seats as when they left. Lamar Ryans, Vernon Ryans's cousin, testified that on January 5, 2006, the four co-defendants were at his mother's house until leaving together about 5:00 p.m. in Williams's car. He added he was not sure of the exact time they got back, but it was after dark.
Forensic evidence established that about 20 bullets were fired at Worrell's house and that they were all fired from either a .380 caliber handgun or a 9mm handgun. A firearms examiner testified that all of the 9mm shell casings found at the crime scene were fired from the same weapon, as were all of the .380 caliber shell casings. He also testified that the .380 bullet removed from the victim and two .380 bullets recovered from Worrell's living room were all fired from the same .380 caliber weapon.
Viewed in the light most favorable to the verdict, the evidence was easily sufficient for the jury rationally to have found Washington guilty beyond a reasonable doubt of felony murder and possession of a firearm during the commission of a crime. Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
2. At the time of trial, Madison had no deal or plea offer with the prosecution in exchange for his testimony, but there had been a previous offer that Madison had refused to accept.[2] On appeal, Washington contends that the trial court erred by not permitting him to cross-examine Madison about the details of the rejected offer. We need not resolve the merits of this issue, however. Because the evidence against Washington was overwhelming, and because the trial court permitted Washington to engage in a thorough cross-examination of Madison, questioning him, for example, about the murder charge pending against him, about whether he expected any favorable treatment from the State for his testimony, and about whether he knew murder carried a mandatory life sentence, any error in the trial court's ruling would be harmless. See Treadwell v. State, 285 Ga. 736, 684 S.E.2d 244, 250-51 (2009); Humphrey v. State, 281 Ga. 596, 599, 642 S.E.2d 23 (2007).
Judgment affirmed.
All the Justices concur.
NOTES
[1] The crimes occurred on January 5, 2006, and Washington was indicted on January 17, 2006. On September 17, 2007, a jury found Washington guilty of felony murder and the firearm offense but not guilty of malice murder. That same day, the trial court sentenced Washington to life in prison on the felony murder conviction and to five consecutive years on the firearm conviction. On October 4, 2007, Washington filed a motion for new trial, and on December 8, 2008, the trial court denied the motion for new trial. On December 18, 2008, Washington filed a notice of appeal, and on February 18, 2009, the case was docketed in this Court. The case was subsequently submitted for decision on the parties' briefs.
[2] Washington claims that Madison entered a negotiated plea deal after testifying, but he provides no record support for that assertion and no details.