## S10A0136. MANLEY v. THE STATE.
## S10A0137. ALLEN v. THE STATE.
### (698 SE2d 301)

MELTON, Justice.

Following a jury trial, co-defendants Steve Manley and Robert Allen appeal their convictions for the murder of Emmett Whatley.[1] For the reasons set forth below, we reverse in Case No. S10A0136 and affirm in Case No. S10A0137.

1. In the light most favorable to the verdict, the record shows that, in or around January 2007, Alexandria Phillips became friends with Whatley and visited his home. A few weeks before Whatley was murdered, Phillips had conversations with Allen, Manley, and Cody Allen-Brown,[2] another co-defendant, about Whatley. She told Allen, Manley, and Allen-Brown that Whatley had a recording studio at his house and that Whatley kept cash in his home. At this point, Allen, Manley, and Allen-Brown planned to rob Whatley. On the night of February 8, 2007, Phillips saw Allen-Brown enter Allen's Lincoln Navigator SUV around midnight (Allen and Manley were already in the car), and Allen called her to get directions to Whatley's home. In a series of subsequent calls, Allen and Phillips discussed that: (1) Whatley was not home; (2) Whatley returned home with a woman; (3) Whatley and the woman left; and (4) Whatley had returned again by himself.[3] Cell phone records prove that calls were made from Phillips' phone to the phones of Manley, Allen, and Whatley near the time of the murder. Other testimony showed that Whatley did have a date that night, and he returned his date to her mother's house around 2:00 a.m.

Some time after 2:00 a.m., Whatley's neighbors heard a gunshot, and one neighbor witnessed three people running from the scene to

---

[1] In an indictment filed on June 19, 2008, Manley and Allen were both indicted for malice murder, two counts of felony murder, two counts of aggravated assault, and the possession of a firearm during the commission of a felony. Following a jury trial held on October 6-10, 2008, both Manley and Allen were found guilty on all charges. Both defendants received a sentence of life imprisonment for malice murder and five consecutive years for possession of a firearm during the commission of a felony. The convictions for felony murder were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the convictions for aggravated assault were merged with the murder convictions for purposes of sentencing. Manley's motion for new trial, which was filed on November 10, 2008 and amended on April 29, 2009 and May 1, 2009, was denied on August 30, 2009. Allen's motion for new trial, which was filed on November 12, 2008 and amended on May 22, 2009, was also denied by the trial court on August 30, 2009. A notice of appeal was filed in both cases on September 1, 2009, and both cases were docketed in this Court on September 24, 2009 and orally argued on January 11, 2010. Due to the related nature of these cases, we have consolidated them for purposes of rendering this decision.

[2] Allen-Brown was also convicted for Whatley's murder.

[3] At one point, the co-defendants asked Phillips to call Whatley in order to get him to come out of his house. At the time Phillips called, however, Whatley was not at home.

an SUV parked down the street. The next morning, Whatley was found dead in his front yard from a gunshot wound to the chest. On February 9, 2007, Phillips met with the co-defendants, and, during this meeting, Phillips received a text message from a friend that Whatley was dead. When Phillips asked the three co-defendants about this, Allen-Brown admitted to the shooting, though he said he did not mean to do it. Allen told Phillips to keep quiet about the crime, and Allen and Manley explained to her that they were going to make up a cover story that they were just trying to buy drugs from Whatley on the night in question. In March of 2007, an informant contacted police to tell them that Allen-Brown had recently admitted to him that he had shot someone. Later, during questioning by police, both Allen and Manley admitted that they went to Whatley's home to buy drugs on the night of the murder but fled when they heard gunshots. In his statement, Manley indicated that he saw a man lying on the ground after the gunshot. Both Manley and Allen implicated Allen-Brown as the shooter in their written statements.

This evidence was sufficient to enable the jury to find Manley and Allen guilty of the crimes for which they were convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Both Allen and Manley maintain that the trial court erred by narrowly restricting their cross-examination of Phillips regarding the changes in her eligibility for parole resulting from the plea and sentencing deal she entered into with the State in return for her testimony and cooperation. Based on the facts of this case, we agree, but we nonetheless find the error to be harmless in this case.

The record shows that, pursuant to her plea and sentencing agreement, Phillips pled guilty to aggravated assault and received a sentence of six years in prison for her role in the crimes against Whatley. This sentence, however, requires Phillips to serve two years in prison before being eligible for parole. See OCGA § 42-9-45 (b). On the other hand, if Phillips had been convicted of Whatley's murder like the co-defendants, she would have received a mandatory life sentence, OCGA § 16-5-1 (d), and she would not become eligible for parole until she had served at least 30 years in prison. OCGA § 17-10-6.1 (c) (1). At trial, Allen and Manley were allowed to ask Phillips about the length of her sentence as a result of the deal, but they were not allowed to question her about any parole differential. Allen and Manley now contend that this restriction violated their confrontation rights and impermissibly prevented them from cross-examining Phillips with regard to any bias in favor of the State or motivation to help make its case.

This issue was recently considered in *Mikell v. State*, 286 Ga. 434, 439 (689 SE2d 286) (2010). In his special concurrence, Justice

Nahmias carefully set forth the law in this area as follows:

In accordance with the decisions of the United States Supreme Court, this Court has explained that: "The Sixth Amendment to the [U. S.] Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' . . . The main and essential purpose of [the right of] confrontation is to secure for the opponent the opportunity of cross-examination. . . . The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Cit.]" *State v. Vogleson*, 275 Ga. 637, 638 (571 SE2d 752) (2002) (quoting *Davis v. Alaska*, 415 U. S. 308, 315-317 (94 SC 1105, 39 LE2d 347) (1974)).

This principle is particularly important with witnesses who have substantial incentives to cooperate with the government. " 'What counts is whether the witness may be shading his testimony in an effort to please the prosecution. "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception." [Cit.] [Cit.]' " *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982) (quoting *Greene v. Wainwright*, 634 F2d 272, 276 (5th Cir. 1981)). Accordingly, "[d]efense counsel is entitled to a reasonable cross-examination on the relevant issue of whether [a] witness entertained any belief of personal benefit from testifying favorably for the prosecution." *Vogleson*, 275 Ga. at 639.

We have also repeatedly held, however, that trial courts: "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Vogleson*, 275 Ga. at 639 (quoting *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986)).

In seeking to reconcile the broad right to cross-examine cooperating witnesses and the trial court's broad discretion to regulate cross-examination, we have considered the extent of cross-examination allowed on other subjects and have also focused on whether the defendant was seeking to elicit "objective evidence" of the disparity between the sentence the witness will get as a result of his cooperation

and the sentence he faced had he not cooperated, as opposed to the witness's mere hope for or speculation about the possibility of a lower sentence. See, e.g., *Vogleson*, 275 Ga. at 638 (objective evidence allows the jury to "determine whether the witness is biased to a degree that affects credibility and is an appropriate subject of inquiry"); *Howard v. State*, 286 Ga. 222, 225 (2) (686 SE2d 764) (2009) (question is whether the witness "obtained a concrete benefit for her testimony by which an objective comparison could be made to her potential sentences"); *Hodo v. State*, 272 Ga. 272, 273 (528 SE2d 250) (2000) (cross-examination regarding possible sentence if witness were ever charged for criminal conduct admitted in his testimony properly excluded as "conjecture").

Our cases have mostly involved such disparities in the *maximum* sentences the witness faced, where the analysis is usually straightforward: compare the total maximum statutory sentence for the charge(s) the witness originally faced with the total maximum sentence for the charge(s) the witness faces after his agreement with the State. See, e.g., *Vogleson*, 275 Ga. at 637 (witness's guilty plea reduced his maximum sentence exposure from 25 years to 10 years).

The same reasoning applies, however, to a concrete disparity between the witness's *minimum* sentences resulting from the charging decisions made by the district attorney in exchange for the witness's cooperation and testimony for the State. The question then is not a change in the *last* date that the witness would get out of prison, based upon the maximum sentence the trial court did or could have imposed on the relevant charges, but rather a change in the *first* date when the witness would be eligible to leave prison, based upon parole eligibility pursuant to the relevant charges. The analysis of such disparities may be more complicated, both because determining parole eligibility often requires looking beyond the terms of the charged offenses to consider the statutes, rules, and practices relating to parole, see, e.g., OCGA §§ 17-10-6.1, 17-10-7, 42-9-39, 42-9-40, and because the Board of Pardons and Paroles is independent of the district attorneys and generally has broad discretion to grant or deny parole, as is correctly noted in *Hewitt* [*v. State*, 277 Ga. 327 (588 SE2d 722) (2003)]. See also *Daker v. Ray*, 275 Ga. 205, 206 (563 SE2d 429) (2002) (parole guidelines established and used by the Parole Board "simply establish an initial date of eligibility for parole, and the ultimate grant or denial of parole to a

prisoner who is eligible for parole remains a discretionary matter for the Board").

But that does not mean that an objective and significant disparity in parole eligibility can *never* be presented. In some cases, particularly those involving statutory mandatory minimum sentences for certain offenses and recidivists, the Parole Board's discretion is limited by statute or by the rules it has adopted. See *Ray v. Barber*, 273 Ga. 856, 857 (548 SE2d 283) (2001) (affirming mandamus order where the Parole Board failed to follow its statutory duties and its rules in determining a tentative parole date). And there is no doubt that, in some cases, the opportunity for earlier release from prison, even if not guaranteed, is an important consideration for a witness facing time behind bars and therefore is an appropriate subject for cross-examination.

The most obvious example would be if the witness had originally faced a life sentence without possibility of parole but, after pleading guilty, faces life with the possibility of parole. While there still can be no certainty that the Parole Board will ever actually parole the witness, the witness's opportunity to leave prison alive, rather than in a casket, is unquestionably a real benefit that could influence the witness's testimony and that the defendant is therefore entitled to make known to the jury. Where the witness's parole eligibility is reduced through the interaction of the district attorney's charging decisions and the laws governing parole, there may be a provable disparity that, if it is significant and was understood by the witness, is a legitimate subject for cross-examination. Likewise, in cases where the district attorney agrees to make a recommendation to the Parole Board in exchange for the witness's cooperation, that benefit is fair game for cross-examination.

This does not mean that parole eligibility will regularly be a topic for cross-examination. In many cases, the time served before parole eligibility will not be affected by the State's dismissal or non-prosecution of some portion of the charges the witness faced. In other cases, evidence regarding the change in parole eligibility would add little to evidence regarding the change in the maximum sentence the witness faced, because the parole eligibility is simply proportional to the total sentence, and thus it could be limited or excluded in the trial court's discretion. In still other cases, the defendant would need to offer or proffer concrete evidence of the operation of the relevant parole

statutes, regulations, or practices to show that an objective disparity in eligibility exists. And in every case, the witness would need to understand the parole disparity and its connection to the district attorney's charging decisions for the issue to be open to cross-examination, as witnesses cannot be influenced by matters about which they are unaware.

It cannot be said, however, ... that simply because authority to grant parole rests with the Board of Pardons and Paroles and not the district attorney's office, cross-examination about parole is irrelevant on [the] question of witness's potential bias in testifying favorably for the district attorney. There will be cases where a significant difference in parole eligibility can be objectively shown under existing law and practice, notwithstanding the Parole Board's independence and discretion.

(Punctuation and footnote omitted; emphasis in original.)

The disparity in this case, eligibility for parole after 30 years of incarceration versus two years served before eligibility, might have provided Phillips with bias in favor of or motivation to assist the State. Accordingly, the trial court erred by denying Allen and Manley any chance to proffer evidence that Phillips was aware of this disparity and, instead, summarily excluding any evidence of Phillips' parole. Under the facts of this case, this error was harmless. Although Allen and Manley were limited from exploring the possibility that Phillips was biased in favor of the State due to her parole disparity,[4] they were allowed to extensively cross-examine Phillips about her potential bias flowing from her plea deal with the State which reduced her possible sentence of life imprisonment to only a six-year sentence. Given the strength of the admitted evidence of Phillips' bias, it cannot be said that there is any reasonable probability that the excluded evidence regarding Phillips' parole would have had any meaningful effect on the jury's consideration of Phillips' testimony.

The special concurrence maintains that there was no error at all in this case. To support this contention, however, the special concurrence is forced to characterize evidence of a witness's parole eligibility as only "marginally relevant" to the issue of a witness's potential

---

[4] Allen and Manley contend that the State capitalized on this error by arguing in closing that Phillips would spend six years in prison. However, the State's isolated reference to Phillips' prison sentence was made to counter the defendants' arguments that Phillips "got the sweetheart deal" of "20 years to serve six years in prison." The State's reference was also made when it urged the jury not to consider Phillips' sentence at all but rather focus on Phillips' consistent version of events.

bias. This finding defies reason. As discussed above, the earliest time at which a witness has a statutorily-provided opportunity to leave prison may bear directly on that witness's motivation to assist the State. "It is clear that the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination." *Vogleson*, supra, 275 Ga. at 640 (1). Accordingly, there was error, though harmless, in this case.

3. In *Hewitt v. State*, 277 Ga. 327 (588 SE2d 722) (2003), this Court similarly considered whether a Sixth Amendment violation occurred when the defendant in that case was prevented from questioning a witness about his parole in order to show bias. We held:

> In this case, there was no evidence of any deal between Montez and the State regarding parole. See *Watkins v. State*, 276 Ga. 578, 580 (3) (581 SE2d 23) (2003). *What is more, as noted by the trial court, the authority to grant parole rests with the State Board of Pardons and Paroles, and not the office of the district attorney. Perez v. State*, 254 Ga. App. 872, 873 (1) (564 SE2d 208) (2002). *Thus, the cross-examination regarding parole was irrelevant on the question of Montez's potential bias in testifying favorably for the State. State v. Vogleson*, supra at 639 (1). It called for mere speculation by Montez. See *Hodo v. State*, 272 Ga. 272 (4) (528 SE2d 250) (2000).

(Emphasis supplied.) *Hewitt*, supra, 277 Ga. at 332 (2). Therefore, in *Hewitt*, we explicitly held that parole eligibility is irrelevant to the question of a witness's potential bias.

This error was carried forward in *Mikell*, supra. In that case, the majority held:

> The transcript reveals that the trial court permitted appellant to question Worthy exhaustively about his knowledge of his possible punishment, thereby allowing appellant to fully explore the possible motivation for Worthy's testimony. See *State v. Vogleson*, [supra]. Because the trial court did not violate appellant's right to confrontation under the Sixth Amendment by not allowing appellant to delve into the issue of Worthy's parole eligibility, see *Hewitt v. State*, [supra] (because authority to grant parole rests with Board of Pardons and Paroles and not the district attorney's office, cross-examination regarding parole is irrelevant on question of witness's potential bias in testifying favorably for the State), no further analysis of this issue is necessary to the

determination of the case at hand. See generally *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (discussing "obiter dicta").

Id. at 436 (2). Unlike *Hewitt*, which found the irrelevancy of parole eligibility to a witness's potential bias to be one reason among others that no Confrontation Clause violation occurred, *Mikell* elevated irrelevancy to the only reason controlling the matter.

Parole eligibility, of course, is not irrelevant to a witness's potential bias. Therefore, to the extent that *Hewitt*, *Mikell*, or other cases which rely on them, can be read to state that a trial court will never err by prohibiting cross-examination on parole eligibility because it is irrelevant to the question of a witness's potential bias, they are hereby overruled.[5]

The special concurrence contends that these cases should not be overruled. Based on the special concurrence's own analysis in the present case, this contention is illogical. The special concurrence, itself, characterizes parole eligibility as *relevant* evidence (although marginally so) to the question of a witness's potential bias. This is in direct contravention to both *Hewitt* and *Mikell*, both of which found the evidence to be irrelevant due to the discretion of the Parole Board over the matter. While the special concurrence correctly states that our case law should not be overruled without valid reason, it must be overruled when it is directly contrary to the current understanding of the law in issue.

4. Both Allen and Manley contend that the trial court erred by excluding any evidence that Whatley was a drug dealer, arguing that this information would have bolstered their credibility by supporting their contention that they were in Whatley's subdivision on the night in question in order to purchase drugs. The co-defendants have made no contention, however, that the purchase of drugs was relevant to the act of murder, itself.

> Generally, a murder victim's character is irrelevant and, thus, inadmissible. [Cit.] Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered. [Cits.] Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth.

---

[5] We emphasize that both questions of whether exclusion of evidence of an alleged parole disparity is error and whether any such error was harmless must be determined on a case-by-case basis.

*Roseberry v. State*, 274 Ga. 301, 303 (2) (553 SE2d 589) (2001).The evidence sought to be introduced by Allen and Manley would only go to show that the defendants were at the scene. It would not shed any light on the murder itself, for which the defendants contended that they were not even present. As a result, the trial court did not abuse its discretion in excluding evidence that Whatley was a drug dealer. See, e.g., *Harris v. State*, 196 Ga. App. 304, 306 (3) (396 SE2d 288) (1990) ("Whether the victim was addicted to cocaine is irrelevant to the issue of whether defendant assaulted the victim.").[6]

5. Both Allen and Manley argue that the trial court erred by restricting their cross-examination of the informant who implicated Allen-Brown in March of 2007. They contend that they should have been allowed to examine the informant regarding criminal charges which were pending against him at the time that he initially made his statement to police. The record shows that, at the time of this statement, the informant had certain charges pending against him. In the interim between making this statement and the co-defendants' trial, the informant pled guilty to a first offender violation and was placed on probation. During trial, the co-defendants wished to question the informant about this offense to show the potential for bias at the time that he gave his initial statement. The trial court, however, prevented such questioning on the basis that first offender records are inadmissible to impeach a witness on general credibility grounds. See *Marks v. State*, 280 Ga. 70 (3) (623 SE2d 504) (2005). While that is generally true, the co-defendants did not wish to impeach the informant in this manner; instead, they wished to show that he had a potential to be biased in favor of the State at the time that he gave his statement. The co-defendants should have been allowed to question the informant about the basis of his first offender plea for these purposes. See *Hibbs v. State*, 299 Ga. App. 723 (2) (683 SE2d 329) (2009), citing *Vogleson*, supra. See also *Smith v. State*, 276 Ga. 263, 265 (2) (577 SE2d 548) (2003). Any error, however, is harmless, as the informant's testimony was, at best, cumulative of Phillips' testimony that Allen-Brown informed her that he had shot Whatley. See, e.g., *Treadwell v. State*, 285 Ga. 736 (1) (684 SE2d 244) (2009).

6. Both Allen and Manley contend that their respective trial counsel rendered ineffective assistance. The record shows that Allen-Brown filed a notice of alibi stating that he intended to call his mother as a witness and that she would testify that he was at home

---

[6] Moreover, we note that there was some evidence introduced at trial that Whatley was a drug dealer. During direct examination, one detective was allowed to testify that Phillips told him that she knew that Whatley was a drug dealer.

on the night of the murder. Allen-Brown, however, failed to timely file his notice, and the trial court determined that the alibi evidence was not admissible. See OCGA § 17-6-6. Manley and Allen now contend that their counsel rendered ineffective assistance by failing to protect the testimony of Allen-Brown's mother.

To prevail on their claim of ineffective assistance of counsel, Manley and Allen must show both that trial counsels' performance was deficient and that, but for that deficient performance, there is a reasonable probability that the result of their trial would have been different. *Wilson v. State*, 286 Ga. 141, 143 (686 SE2d 104) (2009). Reasonable trial strategy and tactics do not amount to ineffective assistance of counsel. Id. Counsel for both Manley and Allen testified that, although they were aware that Allen-Brown intended to put up an alibi witness, neither of them considered it either feasible or proper to file a notice of alibi on behalf of another lawyer's client. They also testified that they had no way of knowing and no reason to believe that Allen-Brown would fail in putting up his alibi defense. Under these circumstances, it cannot be said that trial counsel acted unreasonably or rendered ineffective assistance to Manley or Allen. Id.

7. Separately, Manley contends that the trial court erred by denying his motion to suppress his statement to police that he was in the victim's subdivision on the night of the murder because he intended to buy some drugs. He further stated that, while he was there, he heard a gunshot, went to investigate it, saw the victim on the ground, and ran from the area. Specifically, Manley contends that police improperly continued to question him after he had requested a lawyer, thereby making his statement inadmissible.

> A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the State's case-in-chief. In order for a suspect to properly invoke his right to counsel during a custodial interrogation, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

(Citations, punctuation and footnotes omitted.) *McDougal v. State*, 277 Ga. 493, 498-499 (1) (B) (591 SE2d 788) (2004).

In this case, the facts show that, while the detectives described

the basic procedure of conducting an interview and waiver of rights, Manley interposed: "Can I still be able to talk to my lawyer?" When detectives told Manley his mother was contacting a lawyer, Manley responded: "All I want to know is if I can talk to my lawyer. I'll be honest. I just don't want to go down for something that I didn't do." The detectives responded: "Well, the question is whether you want to talk to us right now, or whether you'd like to talk to your lawyer." Thereafter, the detectives began to read *Miranda* rights, and, as soon as Manley heard that he had the right to a lawyer, he interrupted: "That's what I want right there." A detective responded: "[Y]ou don't want to talk to us without a lawyer being with you?" Manley returned: "I just want a lawyer right here with me. No, I'll talk to y'all, but I just want a lawyer with me." Detectives again questioned: "So do you want a lawyer present, or do you want to talk to us?" At that point, Manley stated that he would talk, *Miranda* rights were read, and questioning continued. At this time, Manley made the statement in issue.

Under these facts, Manley unambiguously requested the presence of his lawyer and any questioning should have stopped immediately.

> Any ambiguity was created solely by the investigator's subsequent questioning. [Manley] "did not use equivocal words such as 'might' or 'maybe' when referring to [his] desire for a lawyer. [He] was also not referring to a need for counsel sometime in the future. . . ." *Taylor v. State*, 274 Ga. 269, 272 (1) (553 SE2d 598) (2001).

*Robinson v. State*, 286 Ga. 42, 44 (684 SE2d 863) (2009). Therefore, the trial court erred by denying Manley's motion to suppress his statement, and, because the admission of Manley's statement at trial was not harmless, Manley's conviction must be reversed.

*Judgment reversed in Case No. S10A0136. Judgment affirmed in Case No. S10A0137. All the Justices concur, except Hunstein, C. J., Carley, P. J., and Hines, J., who concur specially.*

HUNSTEIN, Chief Justice, concurring specially.

I concur in the reversal of Manley's conviction and the affirmance of Allen's conviction. I write specially because I do not agree that the trial court committed any error at all in this case when it exercised its discretion to preclude appellants from cross-examining witness Alex Phillips about her parole eligibility.

1. In its Division 2, the majority holds that it was error to prevent appellants from cross-examining Phillips about her parole eligibility because it "might have provided Phillips with bias in favor

of or motivation to assist the State." Maj. Op. p. 343. The majority then finds this error "harmless" because appellants were allowed to cross-examine Phillips "about her potential bias flowing from her plea deal with the State which reduced her possible sentence of life imprisonment to only a six-year sentence." Id. at p. 343. However, it is precisely because the reduced-sentence evidence established Phillips' potential bias in favor of the State that there can be no error in the limitation placed by the trial court on appellants' cross-examination into parole eligibility. The jury heard that Phillips faced a life sentence yet received only a six-year sentence and that this plea agreement was the reason why she was testifying for the State. Under these circumstances, how could the parole eligibility evidence in this case have demonstrated that Phillips would be "more" biased in favor of the State such that the trial court's exclusion of this evidence constituted error?

Trial courts are granted wide latitude insofar as the Confrontation Clause is concerned "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *State v. Vogleson*, 275 Ga. 637, 639 (1) (571 SE2d 752) (2002). See also *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986). "'(T)he Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."'" [Cits.]" (Emphasis omitted.) *United States v. Owens*, 484 U. S. 554, 559 (108 SC 838, 98 LE2d 951) (1988). I would recognize that, in those situations where the discrepancy between the potential sentence faced by the witness and the plea agreement sentence the witness actually obtained is sufficient, in and of itself, to enable a jury to assess the witness' bias, there can be no abuse of the trial court's discretion when it limits cross-examination on the marginally relevant parole eligibility aspects of the plea agreement. See, e.g., *Mikell v. State*, 286 Ga. 434 (2) (689 SE2d 286) (2010) (no error in restricting cross-examination of witness regarding parole eligibility where witness' guilty plea reduced maximum sentence exposure from multiple life sentences to a single life sentence).

Contrary to the majority's assertion, my recognition of the marginal relevance of the parole eligibility evidence in this case is neither forced nor unreasonable. No juror, after learning about the sweet deal the State offered Phillips for her testimony — even without her candid admission that the deal was the very reason for her testifying — would have needed to hear anything about mandatory minimum imprisonment terms and statutory parole eligibility provisions in order to fully and fairly assess her credibility as a

witness. The only thing that "defies reason" in this case is the majority's conclusion that the trial court *erred* by barring defense counsel from questioning Phillips about parole eligibility. Where is the "wide latitude" trial courts are accorded insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination? The answer, as clearly demonstrated by the majority's holding in light of the facts in this case, is simple: there is none anymore. Every trial judge in this State needs to recognize the true import of the majority's opinion: it is always error to exclude any parole eligibility evidence on cross-examination of State's witnesses who have received plea deals. Bearing this in mind, trial judges should understand the gamble they are taking should they dare to place any limitation on defense counsel in regard to such questioning because only an appellate court can decide whether the trial court's per se error was ultimately "harmless."

2. Because the majority's opinion reaches beyond the resolution of the issue before us to address hypothetical instances where a parole-eligibility limitation on a defendant's cross-examination of a witness may constitute harmful error, I also write specially to note that any potential for witness bias that might arise from parole eligibility is because of the impact of some particular *statutory* provision addressing when an offender may first be eligible for parole, rather than the effect of any exercise of that discretion vested solely in the State Board of Pardons and Paroles ("Board") to grant parole to eligible offenders. See Art. IV, Sec. II, Par. II (a) of the Georgia Constitution of 1983; OCGA § 42-9-1 et seq. See also *Vargas v. Morris*, 266 Ga. 141 (2) (465 SE2d 275) (1996). Mandatory minimum sentences, automatic initial parole consideration statutes, recidivism statutes and the "serious violent felony" punishments set forth in OCGA § 17-10-6.1 are examples of the statutory provisions that provide objective, ascertainable standards that may affect a witness' potential sentence or any plea agreement or both so as to justify exploration on cross-examination into a witness' potential bias in those very rare cases when the discrepancy between the potential sentence and the plea agreement sentence is insufficient to enable a jury to assess the possible self-interest motivating a witness' testimony. In contrast to these concrete statutory standards, and as a result of the complete discretion vested in the Board, it is a matter of pure speculation whether or not the Board will choose to exercise its discretion so as to grant parole when any offender becomes statutorily eligible for parole consideration. It is well established Georgia law that a trial court does not abuse its discretion by limiting cross-examination into speculative matters. E.g., *Dempsey v. State*, 279 Ga. 546 (2) (a) (615 SE2d 522) (2005); *Taylor v. State*, 272 Ga. 744 (2) (534 SE2d 67) (2000); *White v. State*, 268 Ga. 28 (3) (486

SE2d 338) (1997); *Sams v. State*, 239 Ga. App. 715 (4) (521 SE2d 848) (1999). See also Goger, Daniel's Georgia Handbook on Criminal Evidence, § 1-27, p. 42 (2003 ed.). Accord *Vogleson*, supra, 275 Ga. at 639-642 (1), in which it was "the failure to permit Vogleson to cross-examine the accomplice about . . . *objective evidence of a benefit* [that] violated Vogleson's Sixth Amendment right of confrontation. [Cit.]" (Emphasis supplied.) *Howard v. State*, 286 Ga. 222, 225 (2) (686 SE2d 764) (2009). Thus, unlike the majority, I would maintain that trial courts do not abuse their discretion by limiting cross-examination into a matter as speculative as any inquiry must be about a parole-eligible offender's hopes regarding when parole *might* be granted by the Board.

3. Finally, because no reasonable person could possibly interpret *Hewitt v. State*, 277 Ga. 327 (2) (588 SE2d 722) (2003) as the majority does in its Division 3, i.e., as supporting the proposition that a trial court "never" errs by prohibiting cross-examination on eligibility for parole, there is no basis whatsoever for the majority's insistence on overruling that case and *Mikell v. State*, supra, 286 Ga. at 434 (2), "[t]o the extent" they might be so completely misinterpreted. Our case law should not be overruled without valid reason.

I am authorized to state that Presiding Justice Carley and Justice Hines join in this special concurrence.

DECIDED APRIL 9, 2010 —
RECONSIDERATION DENIED JUNE 28, 2010.

*Gerard B. Kleinrock*, for appellants.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.