**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0696. ELLIS v. THE STATE.

MILLER, Judge.

Following a jury trial, Raymond Charles Ellis, Jr. was convicted of possession of a firearm during the commission of a crime (OCGA § 16-11-106 (b) (1)), theft by receiving stolen property (OCGA § 16-8-7 (a)), obstructing an officer (OCGA § 16-10-24 (a)), and driving on a suspended license (OCGA § 40-5-121 (a)). Ellis appeals from the denial of his motion for new trial, contending that the trial court erred in admitting his custodial statements into evidence because the statements were obtained after he clearly invoked his right to counsel. For the reasons that follow, we reverse.

Viewing the evidence in the light most favorable to the jury verdict,[1] the evidence shows that the victim drove to the Southern Springs apartment complex in

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

Morrow to purchase a dog. The victim had a friend follow him to the location. Upon arriving at the apartment complex, the victim was directed to go to the back of a building to find the dog. When the victim did not find the dog, he walked back to his car. Three individuals then approached the victim, and one of the individuals cocked a pistol and pointed it at the victim. The victim got on the ground, and the assailants took the victim's wallet, which held approximately $1,160 in cash, and the victim's cell phone. Ellis and some of the assailants then got into the victim's car.

Ellis, who had a suspended license, drove the victim's car. As Ellis drove off, the victim got into his friend's car, and they followed Ellis. By this time, the victim's friend had called the police. A short time later, police officers joined the pursuit and followed Ellis as he drove to another apartment complex. Once inside the apartment complex, Ellis and another individual exited the victim's car and began to run.

The pursuing officer stopped and exited his vehicle and began chasing Ellis. During the chase, Ellis dropped a loaded gun that was later recovered by the police officer. The parties stipulated that the gun had previously been stolen. Ignoring the police officer's commands to stop, Ellis kept running after he dropped the gun and he only stopped when he tripped and fell, at which point the police officer drew his

service weapon and ordered Ellis to remain still. Ellis was then handcuffed, arrested, and transported to the police department for an interview.

Prior to commencing the police interview, which was recorded, the detective began to advise Ellis of his rights as follows:

> DETECTIVE: Before we get started, I need to advise you of your rights. I'm going to hand you this Miranda form. And I want you to – I want you to read along with what I am saying. And if you understand, I want you to initial next to it. Do you understand?
> ELLIS: Yes.
> DETECTIVE: You have the right to remain silent. Do you understand that?
> ELLIS: Yes.
> DETECTIVE: Put your initials right there.
>
> DETECTIVE: Anything you say can and will be used against you in a court of law. You have the right to talk to an attorney and have him present with you while you are being questioned.
> ELLIS: So I can call him now?
> DETECTIVE: Sir?
> ELLIS: Are you saying I can call him now?
> DETECTIVE: Do you have an attorney now?
> ELLIS: Yes.
> DETECTIVE: You have an attorney? Okay. Let's go ahead and finish with this first. Do you understand that?
> ELLIS: Yes.

The detective then advised Ellis of the rest of his *Miranda* rights and Ellis signed a waiver of rights form. The detective then asked Ellis if he was willing to talk

3

about the incident. Ellis responded that "[i]t don't matter[,]" and agreed to talk to the detective. The detective never honored Ellis's initial request to call his attorney.

During the interview, Ellis claimed that his friend arranged to lure the victim to the Southern Springs apartment complex, he decided to jump into the victim's car when the victim was on the ground, and his friend got into the car with the victim's money as Ellis began driving away. Ellis claimed that there were other people in the area at the time, but he did not know any of them, and that it was his friend who had the gun. Ellis later admitted during the interview that he was carrying a loaded gun, but denied ever pointing it at the victim or taking any money from him.

Prior to trial, Ellis moved to exclude his custodial statements arguing that he clearly invoked his right to counsel. The trial court denied Ellis's motion, finding that he did not clearly request to have counsel present for the interview and that he otherwise validly waived his *Miranda* rights. The taped recording of Ellis's custodial interview was played for the jury. At trial, the victim testified that Ellis did not point a gun at him and had no contact with him during the robbery.

1. On appeal, Ellis contends that the trial court erred in denying his motion to exclude his custodial statements because he made a clear request for counsel and he

4

did not initiate communication with the detective after invoking his right to counsel.

We agree.

> A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the State's case-in-chief. In order for a suspect to properly invoke his right to counsel during a custodial interrogation, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

(Citation omitted.) *Manley v. State,* 287 Ga. 338, 347 (7) (698 SE2d 301) (2010).

Since Ellis's statements to the detective were recorded "and there are no relevant additional facts, the trial court's application of the law to the undisputed facts is subject to de novo appellate review." (Citation omitted.) *Wheeler v. State,* 289 Ga. 537, 538 (713 SE2d 393) (2011).

Here, after the detective advised Ellis that he had the right to talk to an attorney and have the attorney present during the police interview, Ellis asked whether he could call his attorney. First, Ellis asked, "So I can call him now?" While Ellis's request was somewhat muffled, causing the detective to ask for clarification, Ellis then clarified"Are you saying I can call him *now*?" At this point, the detective asked

5

whether Ellis had an attorney, and Ellis responded in the affirmative. In asking whether he could call his attorney, Ellis "did not use equivocal words such as 'might' or 'maybe' when referring to his desire for a lawyer. He was also not referring to a need for counsel sometime in the future[.]" (Citation omitted.) *Robinson v. State*, 286 Ga. 42, 44 (684 SE2d 863) (2009).

To the extent that the State argues that Ellis's statements were ambiguous because the detective sought clarification by asking whether he had an attorney, this claim lacks merit. Out of context, Ellis's questions about whether he could "call him now?" might seem ambiguous. However, Ellis asked these questions when the detective advised Ellis of his right to have an attorney present during his custodial interview. Consequently, it is readily apparent that Ellis was referring to his attorney when asking whether he could call *him*. See *Manley*, supra, 287 Ga. at 347 (7) (the measure of a defendant's request for counsel is whether a *reasonable* police officer in the circumstances would understand the statement to be a request for an attorney).

The State further argues that the Supreme Court of Georgia has held that a defendant's question about whether he could call an attorney is not a clear invocation of his right to counsel. See *Ford v. State*, 257 Ga. 461, 466 (6) (360 SE2d 258) (1987). *Ford* is distinguishable because unlike the circumstances here, the police

6

officers in that case stopped questioning the defendant when he asked to call his counsel, and the defendant later initiated further conversation with the police officers. Id. Moreover, the Supreme Court has more recently held that a defendant's request to call his wife so that she may call his attorney is a clear request for an attorney. See *McDougal v. State*, 277 Ga. 493, 495, 499 (1) (B) (591 SE2d 788) (2004). The Supreme Court has also held that a defendant's request for counsel is not rendered ambiguous simply because it is articulated in the form of a question. See *Taylor v. State*, 274 Ga. 269, 272 (1) (553 SE2d 598) (2001) (statement "Can I have an attorney?" was a clear request for counsel), disapproved on other grounds in *State v. Chulpayev*, 296 Ga. 764, 783 (3) (b) (770 SE2d 808) (2015).[2]

Given this more recent Supreme Court precedent, Ellis's request to call his attorney was a clear invocation of his right to counsel, and the fact that Ellis agreed to talk to the detective after the detective finished reading the form did not vitiate his earlier request. See *Allen v. State*, 259 Ga. 63, 66-67 (1) (a), (b) (377 SE2d 150) (1989) (holding that once the accused invoked his right to counsel, the police must stop all questioning, including advising the accused of his *Miranda* rights, and any

---

[2] The Georgia Supreme court disapproved *Taylor* to the extent that it could be interpreted as providing that the fruits of statements obtained in violation of OCGA § 24-8-824 must be suppressed.

statements by the accused following his initial request may not be used to "cast retrospective doubt on the clarity of the initial request itself.") (citation and punctuation omitted). Therefore, Ellis's custodial statement was taken in violation of his constitutional right to counsel, and the trial court erred in failing to exclude the statement. Id. at 67 (1) (b).

2. This does not end our inquiry, because having found constitutional error, we must determine if that error was harmless.

> Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Reversal is required where there is "a reasonable possibility" that the improperly admitted evidence contributed to the verdict.

(Citation omitted.) *Wingate v. State*, 296 Ga. 21, 27 (2) (c) (764 SE2d 833) (2014). The State has the burden of proving that the constitutional error was harmless. *Horne v. State*, 281 Ga. 799, 808 (5) (642 SE2d 659) (2007). The State did not meet its burden in this case.

In his statement, Ellis provided contradictory explanations about whether he possessed the firearm, which was stipulated to be stolen. At first, Ellis denied carrying a gun, but he later admitted that he had the gun which he said he found by a trash can at a club. Ellis's statement went to an essential element of theft by

8

receiving stolen property because a jury could infer from his contradictory explanations that he knew or should have known that the handgun was stolen. See *Miller v. State*, 275 Ga. 32, 34 (1) (561 SE2d 810) (2002) (defendant's contradictory statements about how he came to possess stolen property are circumstances from which a jury may infer knowledge); *DeLong v. State*, 270 Ga. App. 173, 174-175 (1) (606 SE2d 107) (2004) (whether defendant's explanation of possession of stolen property was satisfactory and credible was a question for the jury to resolve). In light of these circumstances, we cannot say that the State proved beyond a reasonable doubt that the admission of Ellis's statement in violation of his constitutional right to counsel did not contribute to the jury's verdict. See *Woodard v. State*, 256 Ga. App. 464, 466 (1) (568 SE2d 528) (2002).

Excluding Ellis's custodial statement, there was sufficient evidence to sustain his convictions for possession of a firearm at the time of the armed robbery, obstructing an officer, and driving on a suspended license. As a result, he may be retried on these charges. See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992). "The fact there was other evidence sufficient to convict does not, [however,] make the error harmless; rather, the test is whether the evidence may have influenced the jury's *verdict*." (Citation omitted; emphasis supplied.) *Horne*, supra, 281 Ga. at

9

808-809 (5). Since we conclude that the jury's verdict may have been influenced by the improper admission of Ellis's custodial statement, we reverse his convictions. See *Gifford v. State*, 287 Ga. App. 725, 726-727 (652 SE2d 610) (2007) (after reversing convictions based upon conclusion that the constitutional violation was not harmless error, this Court evaluated the sufficiency of the evidence to determine whether defendant may be retried on the charged counts).

*Judgment reversed. Branch, J., concurs. Andrews, P. J., concurs in judgment only.*