In the Supreme Court of Georgia

Decided:   June 6, 2016

S16A0334.  THE STATE v. PHILPOT.

NAHMIAS, Justice.

On September 26, 2012, Brandon Philpot and Travis Yarbrough were arrested for crimes associated with the shooting death of Aaron Holloway and the aggravated assault of four other victims during an armed robbery on September 28, 2010.  After his arrest, Philpot, who had been identified in a photo line-up by one of the victims, was questioned for about an hour by Detectives David Quinn and Brett Zimbrick of the Atlanta Police Department, starting in an interview room at the police station and then continuing outside so Philpot could smoke a cigarette.  The entire interview was audio recorded, apparently surreptitiously, with a device Detective Quinn had on his person.  Near the end of the interview, Philpot admitted that he helped Yarbrough commit the crimes by holding one of the victims at gunpoint.  Philpot never signed a written waiver of his rights.  On December 14, 2012, Philpot and Yarbrough were indicted for murder and numerous other crimes.

On November 24, 2014, Philpot filed a motion to suppress the statement he gave when interrogated by the detectives. The trial court held an evidentiary hearing on June 3 and 5, 2015, at which the audio recording of the interview was admitted into evidence and Detective Quinn and Philpot testified. On June 22, 2015, the trial court granted the suppression motion, ruling that Philpot had unequivocally invoked his right to counsel and had not thereafter reinitiated conversation with the officers or waived his right to counsel. The State filed a timely notice of appeal. See OCGA § 5-7-1 (a) (4); State v. Andrade, 298 Ga. 464, 467 (782 SE2d 665) (2016). We affirm the trial court's decision.

The facts pertinent to our analysis are essentially undisputed; where the State has offered a different view, we rely on what is clear from the audio recording of the interview and on the findings in the trial court's order, which are supported by the recording.[1] The legal principles governing this case are also unquestioned:

---

[1] At the hearing, Detective Quinn testified that the first part of the interview was also video recorded, but no videotape was introduced. A transcript of the audio recording prepared by a transcription service hired by the State was also admitted into evidence. The transcript, however, has several obvious errors and omissions, including at some significant points. See footnote 2 below. Although the State in its brief appears to rely solely on the flawed transcript, we rely on the actual recording, as did the trial court.

2

"A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation. If the police persist in questioning a suspect who has requested that counsel be present, any resulting statements made by the suspect are inadmissible in the State's case-in-chief. In order for a suspect to properly invoke his right to counsel during a custodial interrogation, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

Wheeler v. State, 289 Ga. 537, 538-539 (713 SE2d 393) (2011) (citations omitted). See also Davis v. United States, 512 U.S. 452, 459 (114 SCt 2350, 129 LE2d 362) (1994); Edwards v. Arizona, 451 U.S. 477, 484-485 (101 SCt 1880, 68 LE2d 378) (1981).

At the start of the interview, Detective Quinn began informing Philpot of his rights under Miranda v. Arizona, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and the following exchange occurred:

QUINN: Okay. All right. Number three, you're entitled to have a lawyer now and have them present now or at any time during questioning. Do you understand number three?
PHILPOT: You need his number to get him on file?
QUINN: Say that again.
PHILPOT: My lawyer.
QUINN: Okay, yeah. I mean, exactly.
PHILPOT: You can call the old lady, get her to call him and have him come down here.

3

After some discussion about Philpot's "old lady" – his girlfriend – and the name of his lawyer, the detective said, "So you're saying you have a lawyer is what you're telling me?" and Philpot responded, "Yeah." Detective Quinn then continued to read Philpot his rights:

> QUINN: All right. Number four, if you cannot afford a lawyer, one will be appointed for you without cost, and he may be present at all times during your questioning. You understand that? Number five, you can decide at any time to exercise these rights and not answer any questions or make any statements. You understand that?
> PHILPOT: I need you to call my old lady to get the number.

Philpot then gave Detective Quinn his girlfriend's phone number.

In its brief, the State suggests that Philpot's three references to his lawyer quoted above merely represented an offer to help the detectives "supplement [their] notes." Although Philpot's first mention of his lawyer, asking if the officers needed the lawyer's phone number, may have not been an unambiguous invocation of his right to counsel, in the discussion that followed, Philpot was firmer and clearer in his request that the police officers contact his lawyer directly or through his girlfriend so the lawyer could come there. By the time he reiterated that he needed the officers to call his girlfriend to get his lawyer's number, he had unambiguously invoked his right to counsel. See McDougal v.

4

State, 277 Ga. 493, 499 (591 SE2d 788) (2004) ("A suspect's statement that he wants to call his lawyer or, as in this case, that he wants to contact his wife so she may call his lawyer, is a clear request for an attorney."); Ellis v. State, 332 Ga. App. 883, 885-887 (775 SE2d 238) (2015) (physical precedent only) (holding that the defendant's request to call his attorney was an unambiguous invocation of his right to counsel).

> There was no ambiguity or equivocation in [Philpot's] statement. . . . Any ambiguity was created solely by the . . . subsequent questioning. [Philpot] did not use equivocal words such as 'might' or 'maybe' when referring to his desire for a lawyer. He was also not referring to a need for counsel sometime in the future.

Wheeler, 289 Ga. at 539-540 (quotation marks, citations, and parentheses omitted).

The officers should have stopped questioning Philpot at that point. See id. at 540. Instead, Detective Quinn continued to talk to Philpot about the case, including telling Philpot, in an improper attempt to induce him to continue answering questions: "Well, we can't bring him [your attorney] in here right now. So we can't tell you what's up because you said something about a lawyer. I was prepared to tell you everything we got, tell you what Travis told

5

me and all that, but I can't do that now."[2]

The State contends that even if Philpot did unambiguously invoke his right to counsel, he reinitiated the interrogation and then waived his right. See Vergara v. State, 283 Ga. 175, 182 (657 SE2d 863) (2008) (explaining that a suspect who has invoked his right to counsel may be subjected to further questioning if he reinitiates the interrogation and validly waives his rights to counsel and to remain silent). But nothing in the record supports the State's contention. To the contrary, the recording shows that the detectives never stopped interrogating Philpot, and all the statements Philpot made were in response to police questioning. See Ellis, 332 Ga. App. at 887 ("[T]he fact that Ellis agreed to talk to the detective after the detective finished reading the form did not vitiate his earlier request [for counsel].") Compare Cheley v. State, Case No. S16A0003, slip op. at 8-9 (decided May 23, 2016) (holding that

---

[2] During the continued questioning, Philpot expressed his desire to contact his attorney at least four more times, including saying, "I need to speak with [my girlfriend] so she can call my lawyer, and then we can proceed from there," and "Look – Could you call my lawyer. Call my lawyer." The State's transcript incorrectly reads "pull [indiscernible]" instead of "proceed from there" in the first quoted statement, and the latter statement was omitted in the transcript, although it is clear on the audio recording and the State acknowledged at the hearing that Philpot made it. We need not rely on these later invocations of the right to counsel, however, because Philpot had unambiguously invoked his right at the start of the interview, meaning that the trial court was correct to suppress the entirety of Philpot's custodial statement.

6

Cheley initiated further dialogue with the officers when, after taking a 30-minute break to smoke a cigarette, he said he wanted to speak to the officers again).

For these reasons, we affirm the trial court's order granting Philpot's motion to suppress his custodial statement.

Judgment affirmed. All the Justices concur.